## MARGARETH ARNHORST

*v.*

## THE NATIONAL UNION.

*Opinion filed April 17, 1899—Rehearing denied June 8, 1899.*

1. BENEFIT SOCIETIES—*society seeking to cancel certificate must prove allegations of bill.* A benefit society seeking to cancel a certificate of membership during the member's last illness must prove a substantial violation of the terms of the contract as alleged in its bill.

2. SAME—*when charge of giving untrue answers is not sustained.* An allegation that the defendant to a bill to cancel his certificate of membership in a benefit society gave untrue answers to questions in his application is not sustained, where the defendant testifies that the answers written by the society's examining physician did not correspond with those given by the defendant and that they were not read over to him, which testimony is not denied by the examiner when called by complainant.

3. The court reviews the evidence in this case, and holds that the chancellor was warranted in dismissing complainant's bill to cancel defendant's certificate of membership, on the ground that the evidence did not support the allegations of the bill.

*National Union* v. *Arnhorst*, 74 Ill. App. 482, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. H. V. FREEMAN, Judge, presiding.

CARLOS J. WARD, for appellant.

CHARLES J. KAVANAGH, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

On December 23, 1896, appellee, a benefit association, brought its bill in the superior court of Cook county to cancel a certificate of membership issued May 16, 1895, to Joseph V. Arnhorst for $5000, payable to his wife, the appellant, upon his death. Arnhorst answered the bill and gave his deposition in the case and died soon after, about January 25, 1897. After his death the appellant, the beneficiary, filed her answer, and upon a hearing the chancellor dismissed the bill. On appeal the Appellate Court reversed the decree and remanded the cause, with directions to enter a decree canceling the certificate as prayed in the bill. The case is before us on appeal by the beneficiary, Margareth Arnhorst.

In his application for the certificate, which was made a part of the contract, the insured agreed that any untrue statement made by him to the medical examiner, or any concealment of facts by him in his application in regard to his health, habits or circumstances, should forfeit his right and those of his beneficiary. The bill as originally filed charged Arnhorst with fraud, and also charged a fraudulent conspiracy between him and his

beneficiary in obtaining the certificate, but by amendment the substance of the charge in the bill was, that Arnhorst made untrue answers to the medical examiner of the association and concealed material facts in regard to his health and physical condition, thereby rendering his certificate null and void, and praying that it should be so declared.

The alleged untrue statements to the medical examiner, and concealment, charged in the bill, were that he gave untrue answers to the following questions printed in his application: "When did you last consult a physician?" "What for?" "Give name and address of physician." "Is there anything, to your knowledge or belief, in your physical condition, family or personal history, or habits, tending to shorten your life, which is not distinctly set forth above?" Preceding this last question and following the first three above set out there were upwards of four dozen specific diseases set out in the application, and he was asked whether he was subject to or had ever had any of them, and to each question he answered no, except as to bronchitis, to which question he answered yes, and it is not claimed that any of these answers were untrue. The evidence shows that he had bronchitis and had been treated for it, as stated in his application. But his answer as written by the medical examiner in his application to the question, "When did you last consult a physician?" was, "Four and a half years ago," and to the question, "What for?" the answer was: "Acute bronchitis; two weeks ill; good recovery," and gave the name of Dr. McClelland as the physician; and to the other of said questions the answer was, "No." This application was dated May 1, 1895, and the certificate was issued the same month, and Arnhorst died January 25, 1897, of a cancerous affection of the liver and lower intestines, which, as the medical testimony showed, was caused by gall-stones in the duct of the gall-bladder, and had existed less than a year,—that is, seven or eight months. He answered

"no" in his application to the specific question whether or not he was subject to or had cancer or any tumor, and it is not claimed that this answer was untrue, but its truth is supported by the evidence. Nor is it denied that Dr. McClelland treated him for bronchitis. But treating the answers and questions above set out as material, the question is presented whether or not the evidence justified the trial court in finding that the allegations of the bill were not sustained, and in dismissing the bill.

The deposition of the insured, taken shortly before his death, states that he told the medical examiner, in answer to the question when he last consulted a physician, that he had consulted a physician one and a half and three and a half years before, for bronchitis and stomach trouble, and he testified that he did not read the answers which the examining physician wrote down and that they were not read over to him. The medical examiner was a witness in rebuttal, but he did not deny these statements of the insured. He was the agent of the association. In *Royal Neighbors* v. *Boman*, 177 Ill. 27, we held that the regular examining physician of the insurance company is the agent of the company and that the company is bound by his acts within the scope of his authority, and that the insured is not estopped from showing that the examiner inserted false answers to questions put to the applicant. While the evidence does not show that the medical examiner made any intentional mis-statements of the answers of the insured, we are of the opinion that the learned chancellor was justified in holding that the evidence was sufficient to show that such answers were not correctly written as they were given, and that the insured told the examiner that he had consulted physicians or a physician for bronchitis and for stomach trouble. The medical examiner made an exhaustive examination of the person of the applicant and of his physical condition, and pronounced him a sound man and recommended him for membership, and so testified on the trial.

The bill was filed during the last sickness of the insured, and the forfeiture was sought to be enforced under the following circumstances: Dr. Mai had attended the insured upon two or three occasions about a year and a half before Arnhorst made his application for membership, but was superseded by a military surgeon, whom Arnhorst called because, being in the military service, he was entitled to his services free of charge. There was a controversy between Mai and the Arnhorsts about the payment of Mai's charges, and Mai threatened to make trouble about the insurance, and did go to the agent of the association and told the agent that he had attended Arnhorst in 1893-94 for gastroduodenitis; that both the insured and beneficiary were aware of the disease; that he told the insured there was grave danger that it might develop into a dangerous chronic disease. He also told the agent that he had reason to believe that it would be a fraud and an injustice upon the association to permit the payment of the claim. This was during the last sickness of Arnhorst—a few weeks before his death. Upon this information the bill was filed, and the complainant rested its case upon the testimony of Dr. Mai alone as to the alleged falsity of the answers of the insured to the questions above mentioned. He was contradicted in important particulars by other witnesses, and the threats he made and active interest he took to secure the forfeiture of the contract of insurance could not, under all the circumstances, well be overlooked by the chancellor, who saw and heard him and the other witnesses testify, in passing upon the weight of the evidence. Mrs. Arnhorst testified that Dr. Mai told them at the time that it was inflammation of the stomach, and this corresponds with the statement of the insured to the medical examiner that he had had "stomach trouble," and while she testified that he called it gastroduodenitis, "or something like that," she also testified that he did not say it was of a cancerous or fatal nature. She also testified that her

husband completely recovered, and when he made the application, a year and a half or more afterward, was in good health. This testimony is corroborated by that of the medical examiner, who was called in rebuttal by the association. If Arnhorst had gastroduodenitis in 1893, as Dr. Mai testified, he was not far out of the way in calling it stomach trouble, but the weight of the medical evidence was that when he died his stomach was in a healthy condition.

We are of the opinion that the chancellor was justified in finding that there was no sufficient evidence of fraud, or of the making of untrue answers to the medical examiner, to justify a decree declaring the contract null and void and ordering it to be canceled. If policies of insurance can be forfeited or their payment defeated by failure to remember, or to have stated correctly in the application, every pain or ache or indisposition which the applicant may have had and to which the human body is subject, they would be of but little value and would wholly fail to accomplish the purpose for which they are designed. Undoubtedly the assured and beneficiary were bound by the contract, but the burden of proof was on the complainant to prove the substantial violation of its terms as alleged in the bill. *Continental Life Ins. Co.* v. *Rogers*, 119 Ill. 474.

The chancellor found that the allegations of the bill were not sustained by the proof, and in this finding we concur. The questions involved are those of fact rather than of law, and from the evidence as it appears in the record it was error for the Appellate Court to reverse the decree below.

The judgment of the Appellate Court is reversed and the decree of the superior court is affirmed.

*Judgment reversed.*