# Iowa Life Insurance Company v. Haughton, Administrator.

[No. 6,318. Filed March 19, 1909. Rehearing denied May 14, 1910. Transfer denied November 22, 1910.]

1. TRIAL.—*Interrogatories.—Verdict.—Conflict.*—Answers to interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith. p. 470.

2. INSURANCE.—*Defenses.—Breach of Warranty.—Burden of Proof.*—The burden of proving the assured's breach of warranty in an application for an insurance policy is upon the company. p. 472.

3. INSURANCE.—*False Warranties.—Avoidance of Policy.*—False statements made for the purpose of obtaining insurance and relied upon by the company render the policy voidable at the election of the company. p. 472.

4. TRIAL.—*General Verdict.—Effect.—Insurance.—False Warranties.*—A general verdict for the plaintiff in an action on an insurance policy constitutes a finding against the company on its defense of false warranty. p. 472.

5. APPEAL.—*Presumptions in Favor of Trial Court.*—All reasonable presumptions in favor of the rulings of the trial court are indulged on appeal. p. 472.

6. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting evidence. pp. 473, 480.

7. INSURANCE.—*Medical Examiners.—Authority.—Agency.*—A medical examiner for an insurance company, who examines an applicant, interprets and records the applicant's answers to questions, and reports them to the company, acts within the scope of his authority, and in such matters is the agent of the company, and his knowledge must be imputed to the company. p. 474.

8. INSURANCE.—*False Warranties.—Knowledge.—Questions for Jury.*—Whether assured was informed that he had a certain disease, and whether his answers to questions propounded by the company were false, are questions for the jury. pp. 476, 478.

Iowa Life Ins. Co. *v.* Haughton—46 Ind. App. 467.

9. INSURANCE.—*Policies.—Construction.— Forfeiture.* — Insurance policies are construed strictly against the company, where necessary to prevent a forfeiture. p. 477.

10. INSURANCE.—*Warranties.—Construction.*—A warranty can be created only by the use of unequivocal language, and if the language admits of two interpretations, the one most favorable to the assured will be adopted. p. 477.

11. INSURANCE.—*Medical Examiners.—Knowledge of Applicant's Defects.*—An insurance company will not be permitted to avoid a policy because of false answers to questions propounded, where the company's medical examiner knew of the falsity of such answers. Rabb and Hadley, JJ., dissent. p. 477.

12. INSURANCE. — *Interrogatories to Assured. — Construction. —* Statements of assured as to his physical condition relate ordinarily to the time of the application and examination. p. 478.

13. INSURANCE.—*Statement of Applicant as to Health.—Latent Diseases.*—An insurance applicant's denial of any disease, must be taken in the ordinary sense, and warrants only his *bona fide* opinion and belief. p. 478.

14. INSURANCE.—*Application.—Answers.—Omissions.— Examiners.* —Where assured in his answers to interrogatories propounded by the company, failed to mention a surgical operation performed on him, but the evidence as to the examiner's knowledge of such operation was in conflict, the jury might infer that the omission was purposely made by the examiner, thus sustaining a verdict for the plaintiff. p. 479.

15. INSURANCE.—*Application.—Insanity.—Meaning of.*—Where an applicant for insurance answers that his parents were not insane, the term imports that they were not afflicted with a disordered mind produced from a disease of, or a defect in, the brain. p. 479.

16. INSURANCE.—*Applications.—Denial of Insanity.—Proof of Temporary Insanity.*—An insurance applicant's denial of his parents' insanity is not necessarily shown to be false by proof that his father's mind was temporarily disturbed as a probable result of typhoid fever. p. 479.

17. TRIAL.— *Instructions.—* Where instructions fairly, although awkwardly, state. the law they .will not be considered erroneous. p. 480.

18. EVIDENCE.—*Stenographer's Notes.—Absent Witnesses.—* Where it is shown that a former witness has absconded and that his whereabouts are unknown, the stenographer who reported his testimony may testify from his notes what the testimony of such witness was. p. 480.

19. INSURANCE.—*Soliciting Agents.—Declarations of.—Evidence.—* An insurance company's objections to all of certain evidence, a

part of which was admissible as contradicting the testimony of its. witness, is properly overruled. p. 480.

20. INSURANCE.—*Soliciting Agent's Declarations at Time of Applicant's Examination.—Evidence.*—The declarations of a soliciting agent of an insurance company at the time of an applicant's examination may be admissible, in an action on the policy issued, where such declarations tend to show knowledge of the applicant's physical condition in question. p. 481.

From Daviess Circuit Court; *Hileary Q. Houghton,.* Judge.

Action by Charles E. Haughton, as administrator of the estate of George A. Haughton, deceased, against the Iowa. Life Insurance Company. From a judgment for plaintiff,. defendant appeals. *Affirmed.*

*L. A. Stebbins, Louis B. Ewbank, W. R. Gardiner, C. K.. Tharp, C. G. Gardiner* and *W. C. Johnson,* for appellant.

*A. M. McClure, W. A. Cullop, George W. Shaw, J. P.. Haughton, Samuel Emison* and *A. J. Padgett,* for appellee..

MYERS, J.—Appellee brought this action against appellant to enforce payment of an insurance policy issued by appellant upon the life of appellee's decedent, and made payable to his representative.

The complaint was in one paragraph, and in the ordinary form on such contracts. To the complaint appellant filed two affirmative answers, averring that the assured, as a part. of his medical examination, made false answers to certain questions therein, and such answers were expressly declared to be warranties, and that such answers were taken as the basis of, and as a consideration for, the contract in suit. Also, that said assured, for the purpose of procuring from appellant said contract, wrongfully and fraudulently, and as an inducement to appellant to issue said contract of insurance, and for the purpose of cheating and defrauding it, made certain false and fraudulent statements in regard to his health, which appellant, without any knowledge or notice to the contrary, believed to be true, and thereupon

issued the contract sued on in this action. A reply in two paragraphs alleged that appellant had actual knowledge of the truth of all the facts set up in its answers before and at the time it issued said policy. The issues thus formed were submitted to a jury for trial, and resulted in a general verdict for appellee. The jury also returned answers to twenty-eight interrogatories. Over appellant's motion for judgment on the answers to the interrogatories, notwithstanding the general verdict, and over its motion for a new trial, judgment was rendered on the verdict in favor of appellee and against appellant. Errors are here assigned on the action of the court in overruling each of said motions.

The jury, in answer to interrogatories, found that certain facts, averred as the basis of appellant's answer,

1. were true, but these facts, in view of the issues in this case, are not in irreconcilable conflict with the general verdict, and the motion for judgment was correctly overruled.

One of the reasons for a new trial was that the verdict was not sustained by sufficient evidence.

The only evidence about which there is no controversy may be said to exhibit the following facts: The decedent was born on October 25, 1870. He was a school teacher by profession. He was unmarried. In the fall of 1898, his right testicle being from four to six times its normal size, he consulted a physician at Vincennes, to whom he stated that he first noticed an enlargement of that organ in the preceding February. On December 19, 1898, the decedent's right testicle was removed, and he died on July 20, 1899. Cancer of the stomach was given as the cause of death. During the summer and fall of 1898 he occasionally assisted agents in soliciting life insurance. On November 30, 1898, the application of decedent for a policy of $5,000 was accepted by the Life Insurance Company of Amer-

ica, and a policy issued for that amount. On December 9, 1898, an agent for the Aetna Life Insurance Company secured from said decedent an application for a policy for $2,000, which in due time was issued by that company. On April 6, 1899, an agent for appellant secured from decedent an application, on which the policy in suit was issued.

Doctor Andrew J. Haughton, the father of decedent, resided and practiced medicine at Oaktown, Indiana, for several years prior to his death on January 25, 1890, and at the time of his death was sixty-one years old. In May, 1885, he went to Tonawanda, New York, his home prior to his removal west. Before going to Tonawanda he had been sick eleven or twelve weeks with typhoid fever. From Tonawanda he went to Buffalo, New York, and entered a hospital for medical treatment, and remained there about one year. He was admitted to the Central Insane Hospital at Indianapolis on May 13, 1886, and was discharged June 14, 1886. His wife says that when he returned to Indiana he entered a sanatorium at Indianapolis, where he remained for awhile, and then returned to Oaktown, his home, and continued to practice medicine up to a short time before his death; that he did not have consumption, nor did any member of the family ever have consumption; that he was at no time insane or a person of unsound mind.

This cause was defended on the ground that certain questions propounded by the medical examiner to the assured were falsely answered, and by the terms of the application and contract of insurance sued on such answers were warranted to be true. The questions and answers, so far as they are material, are as follows: "Q. Have you, or either of your parents, or any of your brothers, sisters, uncles, aunts or other near relatives, now or ever had consumption, cancer, gout, scrofula, Bright's disease, diabetes, epilepsy, insanity or other hereditary diseases, other than appear above? A. No. Q. Have you now, or have you

ever had, any of the following diseases? (Answer 'Yes' or 'No' to each.)'' (The names of fifty-six diseases or ailments are submitted, among which are the following: ''Colic,'' ''disease of the liver,'' ''disease of the spleen,'' ''cancer or tumor,'' ''palpitation,'' and ''surgical operation.'' To all of which the answer as recorded is ''No.'' ''Q. Have you ever had any ailment, injury or infirmity whatever, not already named. A. No. Q. Give name and address of each physician consulted or who has prescribed for you during the past five years, and the dates and causes of consultation. A. S. J. Lisman, Oaktown, Indiana, consulted for colds, usually occurring during the winter months.''

Appellant insists that decedent's father had been insane; that decedent at the time he answered the questions propounded by the medical examiner was afflicted with cancer; that his right testicle had been removed by surgeons, and that prior to his application for insurance he had consulted physicians, not named in his answers, for causes not stated. These were issues tendered by appellant, and it had the burden of proving them. Bliss, Life Insurance (2d ed.) §365.

It is the law that false statements made for the purpose of securing insurance, and relied upon by the insurer, will authorize the latter to avoid the contract. But the question in this case, as presented to the jury, was, Did the assured make the alleged false answers? The general verdict on that issue amounts to a finding that he did not, and on appeal all reasonable presumptions will be indulged in support of the proceedings and judgment of the lower court. The evidence was not all in favor of the appellant. There is evidence in the record from which the jury might draw inferences clearly sustaining the general verdict. This being true, our opinion as to the importance or con-

·   trolling influence of certain parts of the evidence,
6.   or the weight that should be given to it in determining the facts, must yield to the verdict of the jury and the judgment of the trial court.

The questions in the medical examination blank were prepared by appellant, and the answers thereto were written therein by its medical examiner. Present at this examination, other than the assured and the examiner, were appellant's agent, Smith, who took decedent's application, and a part of the time, Doctor Sprinkle, who was a partner of the doctor employed by appellant to make the examination. Doctor Sprinkle testified that he was a physician, and was a partner of Doctor Johnson at the time Johnson examined Haughton for insurance with appellant; that he was acquainted with the insured, George Haughton; that while sitting at his desk, about five feet away from Doctor Johnson, he "heard Doctor Johnson propound this question: 'Have you ever had a surgical operation,' and he said: 'Doctor, you know I have, and I suppose that will bar me from life insurance,' and Doctor Johnson told him he would fix that, and I got up while they were talking and left." Another witness, James E. Cullop, testified that about the middle of March, 1899, George Haughton, in company with James G. Smith, who represented the Iowa Life Insurance Company, came to his house. "Smith asked me about taking life insurance, and he said: 'I feel quite sure if you will take insurance Mr. Haughton will.' I made the remark, I had an operation performed on me, and he wanted to know if everyone here had had operations, and I said 'No' He then said: 'He (referring to Haughton) has had an operation performed. That won't make any difference. I will see Johnson, the medical examining physician. Both of you are all right. I want you, Mr. Cullop, to take a policy in my company. I feel sure if you take it Mr. Haughton will,' and I said I hadn't thought much about

insurance and I didn't believe either one would pass. He said castration hurt no one, and went on to explain—He said you could castrate stock and he said there wasn't one out of twenty that died." On April 29, 1899, the witness was examined by Doctor Johnson for a policy of life insurance to be issued by appellant. The surgeon who performed the surgical operation before mentioned testified that, to his best recollection, in speaking to Haughton in regard to his condition, "we referred to it as a malignant tumor, but no other name was given to it." He also testified that there are many tumors that are not malignant, that keep on growing and are not necessarily fatal. Such growths are from an independent source, independent of any physiological functions. If such growth is not malignant it would not be cancer or sarcoma. Mistakes are made by the most eminent specialists in the diagnosis of tumors. Castration of itself is not usually a dangerous operation. Mr. Haughton recovered with ordinary promptness from the operation, and at the time of the operation he appeared in good health and showed no evidence of cancerous cachexia. The surgeon discharged Haughton in January, 1899. At that time he was muscular, his complexion was clear, and he bore the appearance of health, with the exception of the temporary disturbance resulting from the operation and confinement in bed. Said physician saw him no more until July, when he looked pale, emaciated, and as if he were suffering from a grave malady.

Doctor Johnson was employed and paid by appellant to make the medical examination of applicants for insurance with appellant. The controversy regarding the answers found in the examination before us must be determined, and the responsibility be allowed to rest where, under all the facts in the case, it justly belongs. It clearly appears that such examinations made by Doctor Johnson were approved by appellant, and the policies issued upon the faith of his statements. In making such ex-

amination, interpreting and recording the answers of the assured and reporting them to the company, it must be admitted that such examiner was acting within the scope of his authority, and in this respect he must be regarded as the agent of appellant. *Sternaman* v. *Metropolitan Life Ins. Co.* (1902), 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. 625; *Royal Neighbors, etc.,* v. *Boman* (1898), 177 Ill. 27, 30, 52 N. E. 264, 69 Am. St. 201; *Arnhorst* v. *National Union* (1899), 179 Ill. 486, 53 N. E. 988; *Franklin Life Ins. Co.* v. *Galligan* (1903), 71 Ark. 295, 73 S. W. 102, 100 Am. St. 73; *Phenix Ins. Co.* v. *Hart* (1894), 149 Ill. 513, 36 N. E. 990; *Union Mut. Ins. Co.* v. *Wilkinson* (1871), 13 Wall. 222, 20 L. Ed. 617; *American Life Ins. Co.* v. *Mahone* (1874), 21 Wall. 152, 22 L. Ed. 593.

In the case of *Sternaman* v. *Metropolitan Life Ins. Co., supra,* the question of truthful answers incorrectly recorded by the medical examiner was before the court, and it was held to be "established by the weight of authority in this state that the medical examiner is the agent of the insurer in making the examination, taking down the answers and reporting them to the company; that his knowledge, thus acquired, his interpretation of the answers given and his errors in recording them, are the knowledge, interpretation and errors of the company itself, which is estopped from taking advantage of what it thus knew and what it had thus done when it issued the policy and accepted the premiums." Citing authorities.

In the case of *Franklin Life Ins. Co.* v. *Galligan, supra,* the effect of the examining physician's knowledge of false answers made by an applicant for insurance was before the court, and it was there held: "Even if it had been material to the contract of insurance, the knowledge of the physician, the company's agent, under such circumstances, was the knowledge of the company; and the company would be estopped from taking advantage of any false answers to for-

feit the policy, when it knew the same to be false at the time the contract was executed.''

In a note to the case of *Wheaton* v. *North British, etc., Ins. Co.* (1888), 9 Am. St. 216, 234, it is said: ''It is notorious that contracts of insurance are, on the part of the assured, entered into without the advice of counsel, and chiefly in reliance upon the representations of the soliciting agents of the insurer. Such agent is justly looked upon as the accredited agent of the company, in whom it has confidence, and holds out as worthy of the confidence of its patrons. Furthermore, the assumption is perfectly natural that he knows just precisely what information his principal desires, and in what language it may be best expressed, and human nature must be far different from what it is now before the average applicant for insurance can be taught that he must be deaf to the representations of the agent while he sharpens his comprehension and applies it to the careful scrutiny of the insurance stationery, which, even without the suggestion of the wiley agent, it is impossible for him to regard as other than a mere 'matter of form.' ''

In a special report to his company, made at the time of examining decedent for insurance, the medical examiner reported that he had been intimately acquainted with the applicant for eighteen months; that there was nothing unfavorable in his appearance, no present derangement of the functions of the stomach and abdominal organs, no suspicion of enlarged prostate, and other statements of fact showing that he had made a thorough examination of the applicant, closing with the opinion that, as compared with the average lives of the same age and sex, the applicant's chances of life seemed to be first-class.

The surgeon testified from recollection only as to what was said to Haughton months before the trial, concerning his condition. He admitted that mistakes in the diag-

8. nosis of tumors were frequently made. Whether Haughton was informed that he had a malignant tu-

mor, and also whether his answers were false, were questions for the jury. *Henn* v. *Metropolitan Life Ins. Co.* (1902), 67 N. J. L. 310, 51 Atl. 689. See *Moulor* v. *American Life Ins. Co.* (1880), 101 U. S. 708, 25 L. Ed. 1070. The evidence tends to prove that the insured was solicited to take the policy in suit, and at the time the application was taken he appeared to be in good health.

Insurance contracts belong to a class which are to be strictly construed against the company whenever a strict construction is necessary to prevent the forfeiture of the policy. *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651. A warranty is created only by the most unequivocal language, and where the words used will admit of two interpretations, that which is most favorable to the assured will be adopted. *Schroeder* v. *Trade Ins. Co.* (1883), 109 Ill. 157; 1 Bacon, Benefit Soc. (3d ed.) §203; *Alabama Gold Life Ins. Co.* v. *Johnston* (1886), 80 Ala. 467, 2 South. 125, 60 Am. Rep. 112; *Continental Ins. Co.* v. *Vanlue* (1891), 126 Ind. 410, 415, 10 L. R. A. 843; 1 May, Insurance (4th ed.) §§175, 178.

From the evidence before the jury in this case, it might well be said that the soliciting agent and the medical examiner knew that a surgical operation had been performed on Haughton, and from Haughton's statement, they, as representatives of appellant, determined the answers which should be made to the questions propounded. If this be true, the courts, with one accord, hold that the insurer will not be allowed to take advantage of the wrong of its accredited agents while acting in the line of their employment. *German-American Ins. Co.* v. *Yeagley, supra; United States, etc., Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345; *Otte* v. *Hartford Life Ins. Co.* (1903), 88 Minn. 423, 93 N. W. 608, 97 Am. St. 532; *Globe Mut. Life Ins. Co.* v. *Wagner* (1900), 188 Ill. 133, 58 N. E. 970, 52 L. R. A. 649, 80 Am. St. 169; *Pudritzky* v. *Supreme Lodge, etc.* (1889), 76 Mich. 428, 43 N. W. 373; *Moulor* v. *American Life Ins.*

*Co.* (1884), 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; *Moulor* v. *American Life Ins. Co.* (1880), 101 U. S. 708, 25 L. Ed. 1077; *Grattan* v. *Metropolitan Life Ins. Co.* (1883), 92 N. Y. 274, 44 Am. Rep. 372; *Phenix Ins. Co.* v. *Lorenz* (1893), 7 Ind. App. 266, 274.

Near the close of said medical examination will be found this statement: "I am temperate, and, to the best of my knowledge and belief, in sound physical condition and a proper subject for life insurance." This statement on the part of the assured had reference to his then physical condition (*Mutual, etc., Ins. Co.* v. *Higginbotham* [1877], 95 U. S. 380, 24 L. Ed. 499; *Franklin Life Ins. Co.* v. *Galligan, supra*), and is in harmony with the opinion given by the medical examiner after giving him a thorough examination. He may, or may not, have had good grounds for his belief, and, from all the evidence here disclosed, this was a question for the jury. *Owen* v. *Metropolitan Life Ins. Co.* (1907), 74 N. J. L. 770, 774, 67 Atl. 25, 122 Am. St. 413. It will hardly be contended that the contract in suit should be so construed as to relieve appellant from liability because of the presence or some disease in the applicant's system of which he had no knowledge and which a skilful physician, upon a careful examination, could not detect. *Moulor* v. *American Life Ins. Co., supra.* In the case of *Owen* v. *Metropolitan Life Ins. Co., supra,* it was said that a statement to the effect that the applicant had never had a certain obscure disease, "concerning which the insurer should know that the applicant could not have certain knowledge, saving as he might be told by a physician or other expert, is properly to be construed as a warranty only of the *bona fide* belief and opinion of the applicant."

In *Globe Mut. Life Ins. Assn.* v. *Wagner* (1900), 188 Ill. 133, 137, 58 N. E. 970, 52 L. R. A. 649, 80 Am. St. 169, it is said: "To hold that, as a precedent to any binding contract, he should guarantee absolutely that none of his broth-

ers were dead would be unreasonable, in the absence of a more explicit stipulation than here appears.'' In that case, appellant was asked ''How many brothers are dead?'' The answer was: ''None.'' At the time of making said answer, one brother was dead. At the end of the series of questions answered by the applicant in that case, as in this one, he declared and warranted such answers to be true, and that they ''shall form the basis of any contract of insurance that may be entered into between me and the Globe Mutual Life Insurance Association.'' The judgment in favor of plaintiff was affirmed.

In the case before us, the answers of the assured in his medical examination did not disclose the name of the surgeons who performed the operation, nor is anything said as to any medical treatment decedent received from them. The circumstances said to have occurred at the time of the medical examination for insurance regarding a surgical operation and the fact of failure to refer to such operation, might carry the inference of an intentional failure by the examiner to record any other known fact connected therewith, and the conclusion of the jury thereon ought not to be disturbed on appeal. See *Henn* v. *Metropolitan Life Insurance Co., supra; Otte* v. *Hartford Life Ins. Co., supra.*

The answer relating to the insanity of the parent must be taken as generally understood as having reference to a disordered mind from a disease of, or defect in, the brain. The question refers to insanity as a hereditary disease, and the answer should be interpreted as responding to the question in the sense in which it is asked. It may be true that the father's physical condition in 1886 was greatly depleted and weakened by typhoid fever; that he never thereafter fully recovered from the effects of that disease, and for a time seemed to be mentally disturbed, yet, the exact cause of such mental disturbance was not certainly proved. The evidence on that subject was all

submitted to the jury, and the finding was against appellant's contention that a false answer was given. For us to change this finding would require that we weigh the evidence, and this we cannot do.

Appellant insists that the court erred in its instructions to the jury. We have carefully considered all of these instructions, their relation to each other and as a whole. From this investigation it is clear to us that upon a fair and reasonable construction of the wording and language used therein they fairly state the law, and are sufficiently pertinent to the pleadings and the evidence to withstand the objections urged against them.

The ruling of the court permitting a stenographer to read her own notes of the testimony of a witness given at a former trial of this cause to the jury is assailed upon two grounds: (1) The lack of a sufficient showing of diligence to procure the testimony direct from the original witness, and (2) the testimony related to conversations between the witness and a soliciting agent of the defendant. This evidence was not admitted until after the party offering it had shown to the court that the absent witness, a former township trustee, was a defaulter and had left that part of the country, and until the further showing which justified the court in finding that plaintiff and his attorneys had made diligent effort to procure the evidence direct from the witness, and that the whereabouts of the witness was at that time and for months prior thereto unknown to each of them. While the offered evidence was admissible only as a last resort, the case as made or foundation laid for its introduction, was sufficient. As to the second ground, the objection was to all the evidence thus offered, a part of which at least was relevant and admissible as tending to contradict evidence offered by the defendant tending to prove that plaintiff's decedent was personally soliciting agents to insure his life. There was no error in the ruling.

We are also of the opinion that the statements of the soliciting agent with reference to the persons' being insurable, connected as they were with the circumstances which actually occurred at the time the examination was made, were admissible as tending to show knowledge on the part of such examiner of the applicant's physical condition.

Judgment affirmed.

Watson, C. J., Comstock and Roby, JJ., concur. Rabb and Hadley, JJ., dissent.

## DISSENTING OPINION.

RABB, J.—I am unable to concur with the majority of the court in affirming the judgment of the court below in this cause.

The defense relied upon in this case is a breach of warranty, and fraud in procuring the insurance. The insurance policy issued by the company to decedent, was executed by the president and the secretary of the company, for and on behalf of the company. In making the contract they represented the company, and for the purposes of placing themselves in a position intelligently to contract with reference to the subject an application was required to be made by the insured, in which application certain interrogatories were propounded to the applicant, for the purpose of eliciting information important for the insurer to know in order that it might determine whether to accept the risk.

Among the interrogatories propounded to the assured in this case were the following: "Q. Have you now, or have you ever had, any of the following diseases? [naming a large number of diseases, among which were cancer and tumor, or any surgical operation]. A. No. Q. Give name and address of each physician consulted or who has prescribed for you during the past five years, and the dates and causes of

consultation? A. S. J. Lisman, Oaktown, Indiana, consulted for colds, usually occurring during the winter months.''

The insured warranted that the answer to each one of these interrogatories was true, and it is averred in the answer that they were not true; that they were known not to be true by the assured; that they were made for the fraudulent purpose of inducing appellant to enter into the contract, and that appellant did not know of their falsity, and relying upon the answers as true issued the policy of insurance.

The evidence shows that in the summer of 1897 the assured underwent a slight surgical operation for a small abscess on his thumb; that in October, 1898, he consulted a physician and surgeon, named Moore, with reference to an enlarged testicle; that at that time the surgeon made an examination of the diseased organ, and advised the assured the trouble was of such a character as to endanger his life, and that the testicle should be removed; afterward the physician, with the consent of the assured, called in another physician, Doctor Davenport, and the assured consulted with the two physicians with reference to the diseased organ; that they informed him that they believed the trouble to be caused by a malignant tumor, and advised its early removal; that, under their advice, he, in December, 1898, submitted to a surgical operation, by which the diseased organ was removed, the two physicians, with the assistance of Doctor Somers, performing the operation; that in the month of April, 1899, he made application for insurance in appellant company, and answered to the interrogatories propounded to him in the application in the manner heretofore indicated.

The information called for by these interrogatories was of the most important character to the insurance company. Good faith and common honesty required that the assured, making the application for insurance upon his life, in answer to these interrogatories, should fairly and clearly in-

form the company of his condition, of the surgical operation, and give the names of the physicians who were consulted by him. It is scarcely to be believed that had the company been informed of this man's condition, and that he had been afflicted with a malignant tumor, and that it had so recently been removed, it would have accepted the risk. Conceding that it knew he had undergone a surgical operation of some kind, it was entitled to know the names of the attending physicians, in order that it might fully inform itself as to the nature of that operation, and whether the proposed applicant was a proper subject for life insurance,

It is not pretended that the officers of the company, who were charged with the duty and responsibility of making the contract of insurance, had any knowledge whatever upon the subject, and this contract is sought to be upheld upon the testimony of Doctor Sprinkle, who testified that he was sitting in Doctor Johnson's office, reading a newspaper while Doctor Johnson was propounding the interrogatories to the assured and writing the answers; that when the question was propounded: "Have you ever had a surgical operation," the assured said: "Doctor, you know I have, and I suppose that it will bar me from life insurance," and Doctor Johnson told him he would fix that; and the witness got up and left while they were talking.

Doctor Johnson, the examining physician, testified that he wrote the answers that appear in the application precisely as he was directed to write them by the insured, and that he had no knowledge that the insured had ever been subjected to a surgical operation, or that he was afflicted with any cancerous growth of any kind. There is no evidence that tends to show that Doctor Johnson had any opportunity to know about the performance of this grave surgical operation to which the assured had been subjected, except what might be inferred from the testimony of Doctor Sprinkle.

The insured was a school teacher. He had been engaged in the business of soliciting insurance, and the answer which

Doctor Sprinkle says decedent gave to Doctor Johnson, with reference to the effect the surgical operation, that he knew he had undergone, would have upon the acceptance by the company of the risk, shows very clearly that he knew and understood that the company would not accept the risk if it knew the facts. If Doctor Johnson could be said to be an agent representing the company, he was not an agent authorized to contract for the company; and for him to suppress from the company a fact within his knowledge in reference to the risk to be assumed by the company would be a fraud on his part against the company; and if the insured knew that he was thus suppressing such fact, he would be a party to the fraud. If the physician was acting in collusion with the insured, to procure from the company an insurance upon a life that was not an insurable risk, it would not be proper for the beneficiary of a contract so procured to say that the company was chargeable with notice of facts that were thus collusively suppressed by the agent and by the assured. If Doctor Johnson knew of a surgical operation which the assured had undergone, it is not made to appear what surgical operation it was. The evidence showed two surgical operations, one of such a trivial character that it could well be ignored; the other of such a grave character that if it had been known by the company the policy would not have been issued. Nor would a statement, such as Doctor Sprinkle says was made by the assured, while being examined with reference to whether he had undergone a surgical operation, excuse him from answering the question as to whether he had been afflicted with a tumor. The evidence shows that he could not in good faith say that he did not know that he had been afflicted with such tumor. Good faith required him to answer that question, by stating what the fact was with reference to the tumor that had been removed from his body. Nor would such answer excuse the insured from giving a truthful answer to the interrogatory: "Give the name and address of each physician consulted, or

who has prescribed for you during the past five years, and the dates and causes of such consultation.'' He answered this interrogatory, but he did not answer truthfully. He gave the name of one physician—S. J. Lisman—whom he consulted for colds, usually occurring during the winter months, but he suppressed the names of Doctor Moore and Doctor Davenport, of Vincennes, and the cause of his consultation with them. He sought to leave the impression with the company that the only occasion he had had to consult a physician was for an ordinary cold in the winter, and leave it in ignorance of the very serious affliction which had threatened his life, and from the existence of which malady in his system he died in a very few months after the insurance was taken.

In my judgment the verdict of the jury was not sustained by the evidence, and a new trial should have been granted.

Hadley, J., concurring.