DEEP VEIN COAL COMPANY, ETC. *v.* DOWDLE

[No. 28,183. Filed May 14, 1946.]

246

248

*Morton C. Embree* and *Gerald E. Hall,* both of Princeton, for appellant.

*T. Morton McDonald* and *Douglas H. McDonald,* both of Princeton, and *William F. Dudine,* of Jasper, for appellee.

STARR, J.—This action was instituted by the appellee against one Frank Buchanan in the year 1919 to recover damages for an assault and battery. Shortly thereafter, an amended complaint was filed making the Princeton Coal Company an added defendant. The amended complaint sought to recover against the added defendant on the theory that Buchanan was acting as the agent and servant of the company at the time of the assault and battery, and that the company was liable in damages for his wrongful acts. There was a trial and judgment for the plaintiff which judgment was reversed as to said company by this court and a new trial ordered. See *Princeton Coal Co.* v. *Dowdle* (1924), 194 Ind. 262, 142 N. E. 419. Thereafter, by change of venue, the cause reached the DuBois Circuit Court where the plaintiff filed his second amended complaint entitled "Robert L. Dowdle v. Frank Buchanan, Deep Vein Coal Company, otherwise known as Princeton Coal Company," more than 10 years after the assault and battery was alleged to have been committed. The cause as to Buchanan was dismissed.

In this second amended complaint it is alleged that the Deep Vein Coal Company is a corporation engaged in the mining, producing and marketing of coal from the mine situated near the City of Princeton, Indiana, known as the Princeton mine; that the said defendant operated said mine at all times mentioned in the complaint under the name and style of "Princeton Coal

Company"; that for the purposes of evading certain legal liabilities to the employees engaged in the operation of the mine for injuries sustained through negligence or wilful misconduct in the operation of such mine, and in order to fraudulently relieve the defendant, Deep Vein Coal Company, of such liability, the company and certain of its stockholders, officers, directors and agents entered into a lease with a pretended corporation designated as the Princeton Coal Company; that shortly thereafter the Deep Vein Coal Company, its officers and agents, caused articles of incorporation to be executed for said Princeton Coal Company and filed with the Secretary of State of the State of Indiana; that the said Princeton Coal Company was at all times wholly insolvent and irresponsible; that under the terms of the pretended lease it was impossible for the Princeton Coal Company to acquire any assets or take any profit out of the operation of the mine; that on the 4th day of November, 1918, the date when plaintiff sustained the injuries complained of, the Deep Vein Coal Company had the said Buchanan in charge of the operation of the mine and in the commission of the assault and battery Buchanan was acting in the line of his duties as the agent of the Deep Vein Coal Company.

The appellant, under special appearance, filed its plea in abatement to this complaint, which plea, omitting the caption and signatures, reads as follows:

"The defendant, Deep Vein Coal Company, appearing specially and for the sole purpose of filing this its plea in abatement to the second amended complaint herein, says that it is a corporation organized and existing under and by virtue of the laws of the State of Indiana; that it has not heretofore been a party to this action, and is now, by said second amended complaint, sought to be made a party thereto for the first time; that its principal office and place of business is in the

city of Terre Haute, in Vigo County, in the State of Indiana; that its president is Robert J. Smith, a resident of Terre Haute, Vigo County, Indiana; that its secretary and treasurer is M. J. McNellis, a resident of Terre Haute, Vigo County, Indiana; that said persons have been its president and its secretary and treasurer, respectively, and have been in the State of Indiana and amenable to the service of process, continuously since the filing of said second amended complaint; that no summons, or other process against the said Deep Vein Coal Company, in this action, has ever been served upon its president, presiding officer, chairman of the board of directors, or other chief officer, or upon its cashier, treasurer, director, secretary, clerk or general or special agent, or upon any person authorized to transact business in the name of the Deep Vein Coal Company, or upon any person or persons connected with, acting for, or employed by, the Deep Vein Coal Company; that said Deep Vein Coal Company has not been constructively served with summons or other process, in this action, either by publication or otherwise; and that no service of summons, or other process of any character, has ever been had against the said Deep Vein Coal Company in this action.

"WHEREFORE the Deep Vein Coal Company prays that this action abate as to it, and that it be not required to answer the second amended complaint herein."

Issues were closed on said plea in abatement and a trial thereon resulted in a judgment for the appellee. Thereafter a reamended complaint was filed, which reamended complaint is substantially the same as the second amended complaint except that it sets out verbatim in the body thereof, the lease mentioned in the second amended complaint. To this reamended complaint the appellant addressed its demurrer on the ground that the same does not state facts sufficient to constitute a cause of action, and in its memorandum sets out as reasons for such contention that the said

complaint shows on its face that the appellant and Princeton Coal Company were separate and independent corporations; that it does not appear that they were interlocked in any manner nor that the Princeton Coal Company was operated by the appellant as an agent or subsidiary nor is any fact set out which would constitute a conspiracy between the appellant and any other persons, or that appellant had conspired with any other persons to do an unlawful act; or that the appellant was originally sued in the wrong name; or that Frank Buchanan, in assaulting the plaintiff, was acting within the scope of his duties and authority as an agent or servant so as to make the appellant liable. This demurrer was overruled, whereupon the issues were closed by answer and a trial was had resulting in a verdict and judgment for the appellee, which judgment was reversed by this court on appeal. See *Deep Vein Coal Co.* v. *Dowdle* (1941), 218 Ind. 495, 33 N. E. (2d) 981. The mandate of this court in reversing said cause was "To vacate the judgment, and to sustain the motion for a new trial, and to sustain the appellant's motion for a new trial upon the issues formed by its plea in abatement."

After the cause was remanded the trial court duly carried out said mandate; thereupon the appellee filed a second paragraph of reply to the plea in abatement, above set out, which was addressed to the second amended complaint. This new paragraph of reply alleged the same facts set out in the second amended complaint to the effect that the appellant was the owner and operator of the mine in question and that it had operated the same at all times mentioned in the complaint; said reply also set out the same facts as to the relationship between the appellant and the Princeton Coal Company and the execution of the

lease, and further alleged that the appellant had been operating the mine in the name of the Princeton Coal Company; that appellant had been known generally as the Princeton Coal Company in the community in which the mine was situated; and that said names were used interchangeably to designate the appellant as the owner and operator of the said mine. It further alleges:

"Plaintiff says further that the original summons in this cause, issued out of the Gibson Circuit Court for the Princeton Coal Company, was duly served by the Sheriff of Gibson County on the 21st day of April, 1919 by reading the same to and within the hearing of one Joseph Applegath and by delivering a true and certified copy thereof to the said Applegath, he being the highest officer of the defendant found in said county; that said summons was forthwith turned over to the defendant, Deep Vein Coal Company and said defendant, by and through its president, one Robert J. Smith, immediately took charge of the defense of said cause to the exclusion of any officers of said Princeton Coal Company, employed attorneys to conduct the defense of said cause, which said attorneys duly appeared for the defendant in said cause and with said defendant Deep Vein Coal Company voluntarily conducted the defense thereof in the name of said Princeton Coal Company; that said defendant Deep Vein Coal Company has ever since the commencement of said action actively engaged in and conducted the defense of said cause of action in the name Princeton Coal Company."

To this second paragraph of reply to appellant's plea in abatement, the appellant filed its demurrer for insufficiency of facts. In its memorandum thereto the appellant specifies that the allegations contained in the same do not show the commencement of an action against the appellant by the filing of a complaint and the issuance of summons thereon, nor that the appellant ever

appeared to this action; that what is attempted by the appellee is a substitution of parties instead of a correction of the name of a party; that the plea shows on its face that the summons was issued to the Princeton Coal Company and served on it by service upon one who is an officer in both companies; that all the questions raised by said second paragraph of reply were adjudicated against the plaintiff in the case of *Deep Vein Coal Co.* v. *Dowdle, supra,* which has become the law of this case, and that the facts alleged therein under the law of said case are not sufficient to avoid the plea in abatement. This demurrer was overruled.

Thereupon, this cause was submitted to the jury on the issues raised by the appellant's plea in abatement and after trial of said cause the jury rendered a verdict in favor of the appellee that said action do not abate and judgment was duly rendered on said verdict. In due course, appellant filed its motion for a new trial which was overruled. It is thus apparent that by the verdict in appellee's favor on the issue of the plea in abatement, the appellant was again required to meet the allegations of the reamended complaint. The cause was thereupon submitted for trial upon the reamended complaint and appellant's answer thereto, and resulted in a verdict and judgment thereon for the appellee in the sum of $7,000. The appellant thereupon filed its motion for a new trial which was overruled.

The errors assigned and not waived are as follows: 1. The court erred in overruling the demurrer of the appellant to the second paragraph of the reply of the appellee to the plea in abatement of the appellant. 2. The court erred in overruling the motion of the appellant for a new trial of the issues arising upon the plea in abatement of the appellant and the reply of the appellee thereto in two paragraphs. 3. The court

erred in overruling the demurrer of the appellant to the reamended complaint. 4. The court erred in overruling the motion of the appellant for a new trial of this cause on the issues arising upon the reamended complaint and the answers of the appellant thereto. We will discuss these assignments in their order.

The appellant throughout its brief has contended that the law of this case is the law as set out in our opinion in *Deep Vein Coal Co.* v. *Dowdle, supra.* There were new issues made and new facts introduced after this case was remanded and new and different evidence was offered and given, and as to such new issues and new facts we are not bound by said former opinion, but must apply the law applicable to the new and changed pleadings and facts. *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Eckert* v. *Binkley* (1893), 134 Ind. 614, 33 N. E. 619, 34 N. E. 441; *Alerding* v. *Allison* (1907), 170 Ind. 252, 83 N. E. 1006.

Relying upon *Berghoff* v. *McDonald* (1882), 87 Ind. 549, the appellee contends that no question is raised by appellant's first and second assignment of error for the reason that by the filing of the reamended complaint, the appellee's second amended complaint and all pleadings addressed thereto were taken out of the record, and as the same were not incorporated by a bill of exceptions, they are not before us. Regardless of what the law is on this point generally, the law in this particular case has been established in the case of *Deep Vein Coal Co.* v. *Dowdle, supra.* The reamended complaint was filed prior to that appeal as shown by the opinion. The mandate was that a new trial be granted upon the issues formed by appellant's plea in abatement. After the granting thereof in the court below, the appellee addressed a reply to said plea in abatement and throughout the

proceedings in the court below has treated said second amended complaint and plea in abatement as being in the record.

It was not error to overrule appellant's demurrer to the appellee's second paragraph of reply to the plea in abatement. In the portion of said reply above set out verbatim, it was alleged that the appellant immediately after process was served employed attorneys and took charge of and conducted the defense of this cause in the name of the Princeton Coal Company. A good defense to the plea in abatement was thus pleaded. *Palmer* v. *Hayes* (1887), 112 Ind. 289, 13 N. E. 882. In the last mentioned case the court quoted the language found in *Jackson* v. *Griswold* (1842), 4 Hill (N. Y.) 522, 530, as follows: "There are certainly many cases where a person, though not a nominal party to the suit, shall yet be concluded by it, because he has in fact taken the management of the cause; nay, where he has had notice of its pendency and a chance to litigate, but neglected to do so." See also *Shugart* v. *Miles* (1890), 125 Ind. 445, 25 N. E. 551; *Montgomery* v. *Vickery* (1886), 110 Ind. 211, 11 N. E. 38; *Goldblatt Bros., Inc.* v. *Parish* (1941), 110 Ind. App. 368, 33 N. E. (2d) 835, 38 N. E. (2d) 255; *Caterpillar Tractor Co.* v. *International Harvester Co.* (1941), 120 F. (2d) 82; *Schmidt* v. *Louisville, Cincinnati & Lexington Railway Co.* (1896), 99 Ky. 143, 35 S. W. 135, 36 S. W. 168, 139 A. L. R. 9 Note

In *Schmidt* v. *Louisville, Cincinnati & Lexington Railway Co., supra,* it was stated that where a corporation which should have been the real defendant has filed its answer in the name of the nominal defendant, employed counsel to make defense and controlled the defense from the time of service of process, such corporation would be bound by the judgment in such

action. As the case had already been reduced to judgment the court denied the plaintiff's petition to make the real party in interest a party defendant, but said that, considering the facts stated to be true, the railroad was already a party defendant and bound by the judgment. Following this suggestion a rule in the lower court was granted condemning the company to pay the judgment less a set off allowed to it. In affirming this judgment the Supreme Court of the United States determined due process of law had not been denied the railroad company. *Louisville & N. R. Co.* v. *Schmidt* (1899), 177 U. S. 230, 44 L. Ed. 747, 20 S. Ct. 620.

Under the second assignment appellant argues that the verdict of the jury that the action do not abate, was contrary to law and not supported by the evidence. Considering the evidence most favorable to the appellee the record discloses that at the time of the beginning of this suit both the appellant and Princeton Coal Company were corporations; that Robert J. Smith was president and director and ranking officer of the appellant company and the appellant owned the mine in question, and that Robert J. Smith did not know to whom the summons in this action came, but he supposed that it came to him; that he employed attorneys to defend this case; that when the summons was served it was brought to his attention; that he has been actively participating in and conducting the defense ever since that time; that when the judgment was originally procured in this case, he put up a bond which indemnified the person who signed the appeal bond on behalf of Princeton Coal Company; that Robert J. Smith was acquainted with Joseph Applegath and had known him since 1912; that Robert J. Smith and Ridgely Rea owned the controlling interest in the Princeton

Coal Company at the time that it was organized; that the legal offices of the Princeton Coal Company and the appellant were at the same address in Terre Haute, Indiana, in a building owned by the appellant; that Robert J. Smith and one Mr. Manson, a stockholder of the appellant, continued to direct the operations of the mine after the son of Robert J. Smith, became the president of the Princeton Coal Company; that it was the custom for the appellant to order material and supplies used in operating the Princeton Coal Company; that the appellant, by a writing filed with the industrial board, guaranteed the payment of all awards made by the industrial board against the Princeton Coal Company and all payments of whatever matter arising under the Workmen's Compensation Act, and agreed to make all such performances and payments the same as if it were the direct employer of all employees and workers for the Princeton Coal Company, and consented to acknowledge all services, notices and requests made by the industrial board upon the Princeton Coal Company; that the mine was operated under the name of Princeton Coal Company and also Deep Vein Coal Company; that these two names were used interchangeably in the operation of the mine; that all labor disputes were finally taken up with Robert J. Smith; that the money for the pay rolls was furnished by the Deep Vein Coal Company; that at the time of the acts complained of Robert J. Smith was active in the management of the Deep Vein Coal Company; that on one occasion Robert J. Smith, the president of the Deep Vein Coal Company, advanced $5.00 to a miner who worked in the mine in question and it was thereafter deducted from his wages; that supplies shipped to the mine were sometimes shipped to Deep Vein Coal Company and sometimes to Princeton Coal Company; that

Mr. Applegath paid out the wages at the mine; that the same firm of attorneys have defended this case throughout; that from the time this suit was commenced and the summons was served, and when Robert J. Smith took charge of the management and control of the defense, he was then the president of the Deep Vein Coal Company and had no connection, either as stockholder, president, director or anything else of the Princeton Coal Company; that coal that was mined was sold and handled by the Deep Vein Coal Company; the coal was advertised as Deep Vein Coal Company coal and also as Princeton Coal Company coal; Mr. Applegath at times consulted with Robert J. Smith in regard to his work. There is also evidence as disclosed by the minutes of stockholders' and directors' meetings of the appellant that the appellant had considered and discussed matters in regard to the operation, management and disposition by it of said mine during the time that it contends that the same was being operated and managed by the Princeton Coal Company.

From the foregoing resume of the evidence we cannot say that the verdict of the jury was contrary to law and not supported by the evidence, nor that the court erred in refusing to peremptorily instruct the jury to find for the appellant.

There was no error in the court refusing to give appellant's Instruction No. 4. The substance of this tendered instruction is that if no summons was issued and served upon the appellant within two years from the time of the alleged injury, the verdict should be for the appellant. Under the law as we have stated it to be in this opinion, such summons could be dispensed with if the appellant itself actually appeared and defended even though it was done in the name of a nominal defendant.

In appellant's third assignment of error, it complains of the overruling of its demurrer to the appellee's re-amended complaint. We are of the opinion that the same states a good cause of action. As we construe it, the amendment is not a substitution of a new party defendant but only amends the name under which the defendant is being sued. Although there is a great deal of surplusage and evidentiary matters pleaded in said complaint, yet when the same alleges that the appellant committed the acts complained of by and through its agent, servant and employee, to-wit: its mine superintendent, who was clothed with the right, power and authority to exclude and eject from its premises any and all persons whose presence thereon he might consider detrimental and prejudicial to the best interest of the defendant company, we are of the opinion that this clearly shows that by this complaint the appellee was not attempting to substitute a new defendant. The appellant in its memorandum attached to its demurrer wholly fails to point out as grounds therefor, that the complaint shows on its face that the matters complained of occurred more than two years either prior to the filing of said complaint or the bringing of this action.

The last assignment of error complains of the action of the court in overruling appellant's motion for a new trial of this case on its merits. The first and second causes for said motion are respectively that the verdict of the jury is not sustained by sufficient evidence and is contrary to law and will be considered together. Under these assignments, the appellant has stated a great many points, all of which are to the effect that the evidence was insufficient because there was no evidence that the appellant committed the act complained of or was operating the mine at the time said

act was committed, or that the said Frank Buchanan was the servant of the appellant or was on the premises of the appellant as such servant at the time of the complained of act, or that the act done was within the scope of his authority as an agent or employee of the appellant.

The substance of the evidence most favorable to the appellee is as follows: that the appellee was, at the time of his injury, working as a check-weighman for the miners employed in the mine of the appellant at Princeton, Indiana, and was employed by them; that a controversy arose over the weighing of the coal between the miners and the appellant, and the appellee agreed with the weigh-boss of the appellant to leave the matter to the committee of the miners employed at the said mine known as the mine committee, and appellant's top boss to adjust; that the said Frank Buchanan was known as the "top boss" and had on previous occasions, as representative of the company, negotiated grievances and adjusted disputes of this character; and that there had been no instructions given to take such matters up with anyone other than the said Buchanan; that the said committee went to the place where they had usually and customarily for a number of years gone to discuss such matters with Buchanan; that the operator of the mine was usually referred to as Deep Vein Coal Company and sometimes as Princeton Coal Company; that the names were used interchangeably; and that at the various meetings had at the office of the "top boss" the operator was always referred to as the Deep Vein Coal Company; that the employees at the mine received "weigh-slips" at the head of which part of the time was the name of the Deep Vein Coal Company; that the place where the injury occurred is on the property of the

appellant, and Frank Buchanan was top superintendent for the appellant. One employee of the appellant testified he did not know any other name for the company that operated the mine than Deep Vein Coal Company, and that he got that information from the officials of the company at its office in Princeton when he went there to get his pay; that at the time of plaintiff's injury the president of the appellant, along with his wife, owned more than 50 per cent of the capital stock of appellant company; that appellant was the owner of the mine where the plaintiff was injured and advanced the money to meet the pay rolls for that mine and sold all of the coal produced there; that whatever the president and a certain banker by the name of Manson, who was one of the stockholders of appellant, said concerning the operation of said mine "went" and that they directed the operation of said mine; that the president of appellant employed the attorneys who defended this suit and actively participated in and conducted the defense thereof; that business transacted at certain stockholders' and directors' meetings of the appellant would support the inference that the appellant was participating in the operation of the mine in question; that at the time that the appellee was injured, he along with the mine committee and at its request, had gone to said Buchanan to discuss and attempt to settle a dispute between the appellant and the employees arising out of the weighing of the coal from said mine; that in the presence of the appellee and on the premises of the company Buchanan began to discuss the grievances with the committee; that the committee had before been directed to take up such grievances with said Buchanan; and that they had taken the appellee along with them "for evidence"; that without objecting

to the appellee's presence Buchanan undertook to discuss the grievance with said committee, which grievance had grown out of the instructions given by Buchanan to the "weigh boss" to change the manner of weighing coal; that during the conference Buchanan stated that the appellee had nothing to do with the controversy and ordered him out of the office; that the appellee refused to leave the premises and stated "If you want to make it that way, put me out"; that thereupon Buchanan hit the appellee over the head with a pick-handle; that Buchanan had complete charge of the premises and had been known in one instance at least to order persons off the same. We think the foregoing evidence was sufficient to sustain the verdict.

The next cause for new trial is that the court erred in admitting the testimony of Frank Buchanan given upon the former trial of this case. There was no error in the admission of this evidence, as prior to the admission of this testimony the plaintiff had offered evidence that the said Frank Buchanan was not in the State of Indiana; that he had been away from the state 17 or 18 years, and that nothing has been heard from him since his departure, and that appellee had made a search for him at Terre Haute and had discovered that he had gone to California to live. A proper foundation was thus laid for the introduction of this testimony. This was all that was necessary to be shown in order to make this testimony admissible. *Reichers* v. *Dammeier* (1910), 45 Ind. App. 208, 90 N. E. 644; *Iowa Life Ins. Co.* v. *Haughton* (1910), 46 Ind. App. 467, 87 N. E. 702; *Harrington* v. *Harrington* (1905), 36 Ind. App. 536, 35 N. E. 1082.

As further cause for a new trial appellant contends that it was error for the court to admit in evidence

plaintiff's Exhibit No 1, which was a certified copy of the application of the Princeton Coal Company to the Industrial Board of Indiana for permission to carry its own insurance, to which was attached a copy of the minutes of the meeting of the board of directors of the appellant company, wherein said company guaranteed the payment of all awards made by the industrial board against the Princeton Coal Company, and all payments of whatever matter arising under the Workmen's Compensation Act, and agreed to make all such payments as if it were a direct employer of all the employees of the Princeton Coal Company, and agreed to accept all notices and requests made by the industrial board upon the Princeton Coal Company. We think this evidence was competent upon the issues raised.

Appellant assigns as a further cause for a new trial the admission in evidence of appellee's Exhibit 2, which was a contract between the Gibson County Horticultural and Agricultural Society, the Princeton Coal Company and the appellant. This instrument recites that the appellant and Princeton Coal Company were the owners and operators of the mine and was properly admitted for the consideration of the jury on the question as to whether or not the appellant was in fact operating the mine. Nor was it error for the court to admit in evidence the minutes of one meeting of the stockholders and two meetings of the board of directors of the appellant. These items had probative value similar to that of the contract just mentioned.

The appellant, as grounds for a new trial, also contends that it was error to permit the appellee to offer

in evidence certain pleadings filed by counsel for appellant during the progress of this case. This evidence was not prejudicial. These pleadings, without being offered in evidence, were before the court and the averments contained in the same could have been commented upon before the jury in the same manner as any other facts appearing in the cause. *Colter* v. *Calloway* (1899), 68 Ind. 219; *Boots* v. *Canine* (1883), 94 Ind. 408; *Tucker* v. *Hyatt* (1895), 144 Ind. 635, 41 N. E. 1047, 43 N. E. 872.

Appellant in its motion for new trial complains of the giving of appellee's tendered Instruction No. 6.

Appellant, by way of its third paragraph of answer to appellee's reamended complaint, pleaded the two year statute of limitation. This instruction reads as follows:

"The court instructs the jury that upon the issues raised by the third paragraph of answer of the defendant Deep Vein Coal Company to the plaintiff's reamended complaint and the reply thereto in general denial, the burden is upon said defendant to establish by a fair preponderance of the evidence that plaintiff's action against said defendant was not commenced within two years after it accrued.

"And you are further instructed that if you find from a fair preponderance of the evidence that this action was originally commenced within two years next after its accrual on the 4th day of November, 1918, in the Gibson Circuit Court and that said defendant Deep Vein Coal Company, by and through its president Robert J. Smith, immediately took charge of and actively participated in the defense of said action, employed attorneys to conduct the defense of said cause, for its own benefit, and in all things defended said cause as though it had been instituted against said defendant in its own corporate name, then, in that view of the case, if you so find, said defendant has not estab-

lished the truth of the averments of its said third paragraph of answer and upon that issue, your finding should be for the plaintiff."

Appellant's objection to this instruction was as follows:

"That is not a correct statement, because that omits the element—first, it usurps the province of the Jury, and omits the element that the Court has jurisdiction of the person of the defendant Deep Vein Coal Company."

This instruction is not subject to the infirmity complained of in appellant's specific objection. By the verdict of the jury that this action do not abate, it was established beyond question, that the court had jurisdiction of the person of the defendant. What is said in *Deep Vein Coal Co.* v. *Dowdle, supra,* in regard to there being no evidence of appellant having had a day in court, is not the law of this case, for the reason that in the trial on the plea in abatement from which this appeal is taken, this issue was directly raised by the second paragraph of reply to the plea in abatement and decided by the verdict of the jury. See *Montgomery* v. *Vickery, supra.*

Appellant's next objection in his motion for new trial is that the court erred in giving Instruction No. 7 tendered by the appellee. This was an instruction which purports to instruct the jury as to the liability of the corporation for the wilful acts and torts of its agent committed within the general scope of the agent's employment and within the line of his duty. This instruction is not subject to the infirmity complained of. The appellant bases his objection thereto upon the erroneous assumption that the evidence tending to prove certain facts is undisputed which, in our opinion, is not the case. Appellant also

contends that the instruction is not supported by the evidence, with which we cannot agree.

Instruction No. 12 tendered by the appellant, purported to instruct the jury that the law raises a presumption that appellant neither intended or contemplated that Buchanan would commit an unlawful assault. Such an instruction is never proper. *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N. E. (2d) 784.

Appellant, in its motion for a new trial, questions the court's ruling in refusing to give its tendered instruction for a directed verdict at the close of all the evidence. For the reasons set out heretofore, in deciding that there was sufficient evidence to support the verdict it is our opinion that this instruction was properly refused.

Judgment Affirmed.

NOTE.—Reported in 66 N. E. (2d) 598.