## METROPOLITAN LIFE INSURANCE COMPANY *v.* JOHNSON.

[No. 6,915.  Filed April 19, 1911.  Rehearing denied June 29, 1911. Transfer denied January 12, 1912.]

1. INSURANCE.—*Applications.*—*Warranties.*—Definite, unambiguous and unequivocal statements in insurance applications are ordinarily considered as warranties, but the parties may contract otherwise. p, 240.

2. INSURANCE. — *Application.* — *Representations.*—*Policies.*—Where an insurance policy provided that such policy was "issued upon

application which omits the warranty usually contained in applications, and contains the entire agreement," and that such policy should be void if the assured had been attended by a physician "for any serious disease," or prior to the issuance of such policy had been afflicted with "cancer, or disease of the heart, liver or kidneys," and in the assured's application she stated, among other things, that no physicians had attended her within two years prior thereto, such statements in such application are mere representations and not warranties. p. 241.

3. INSURANCE.—*Void Clauses.—Election.—Answer.*—A void clause in an insurance policy renders such policy voidable at the election of the company on the happening of the event; and an answer of avoidance must show a seasonable return, or tender, of the money received. pp. 241, 243.

4. INSURANCE.—*Avoidance of Policy.—Forfeiture of Premiums.*— A provision in an insurance policy that if the company avoids the policy "all premiums paid shall be forfeited to the company," is nullified by an election of the company to treat the contract as void. p. 241.

5. INSURANCE.—*Policies.—Construction.*—Insurance contracts are construed most strongly in favor of the assured; and where a policy contains inconsistent provisions, or requires construction, that view sustaining the policy will be adopted, where possible. p. 242.

6. INSURANCE.—*Policies.—Representations.*—In determining the assured's good faith in making representations to an insurance company, her subsequent conduct in telling the company's agents of her ailments may be considered. p. 243.

7. INSURANCE.—*Agents.—Knowledge of.*—Knowledge of the facts by an insurance company's agent who took the assured's application and delivered the policy, or by the assistant superintendent of the company, is attributable to the company. p. 244.

8. INSURANCE.—*Policies.—Provision for Waiver.—Waiver of.*—A provision in an insurance policy that no waiver of any provision of the policy can exist unless in writing and signed by the secretary of the company, may itself be waived. p. 244.

9. INSURANCE.—*Policies.—Breach.—Election.*—The acceptance, or retention, of premiums on an insurance policy after knowledge of a breach of the provisions of the policy, constitutes an election not to avoid such policy. pp. 244, 246.

10. INSURANCE.—*Policies.—Void Clauses.—Reply.*—In an action on an insurance policy, the answers being a breach, by the assured, of some void clauses of such policy, a reply that the company, with notice of such breach, accepted and retained the premiums on such policy, is sufficient. p. 245.

11. INSURANCE. — *Representations. — Interrogatories.—Evidence.*— Evidence that the assured's physicians informed her that in their

opinion she had cancer, that their diagnosis was not complete, that the assured worked hard and did not believe she had any serious disease, tend to sustain the answers of the jury that she was not so afflicted, though, without her knowledge, she had incipient cancer. pp. 245, 246.

12. TRIAL.—*Instructions.*—*How Considered.*—Where the instructions, considered as a whole, fairly state the law of the case to the jury, prejudicial error cannot be predicated thereon. p. 247.

13. TRIAL.—*Interrogatories.*—*Requiring Jury to Answer After Return of General Verdict.*—The trial court's action in requiring the jury, after reporting their general verdict, to return to the jury room and to complete the answers to the interrogatories, in the absence of a showing of prejudice therefrom, is not objectionable. p. 247.

From Cass Circuit Court; *John S. Lairy*, Judge.

Action by Samuel M. Johnson against the Metropolitan Life Insurance Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Myers & Yarlott* and *Paul M. Souder*, for appellant.

*George A. Gamble*, for appellee.

FELT, J.—Action by appellee against appellant to recover upon a policy of industrial insurance issued upon the life of appellee's wife. There was a judgment for $137.79, from which this appeal is taken.

The complaint is in one paragraph and in the usual form. Appellant filed affirmative answers in three paragraphs. These answers admit the main allegations of the complaint, but seek to avoid liability by special averments relating to the application and policy.

The first paragraph of answer avers in substance that the contract expressly provides as a condition precedent to the execution of a valid contract of insurance upon the life of appellee's wife, that

"no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health"

and also, that the policy is issued and accepted upon the conditions following:

"First.    This policy is issued upon application
which omits the warranty usually contained in appli-
cations, and contains the entire agreement between
the company and the assured and the holder and
owner hereof.    *    *    *    Second.    Unless otherwise
stated in the blank space below, in a waiver signed
by the secretary, this policy is void if the insured
before its date    *    *    *    has been attended by a phy-
sician for any serious disease or complaint, or has had
before said date    *    *    *    cancer, or disease of the
heart, liver or kidneys."

Appellant avers that on September 5, 1904, said insured
was not in sound health, and she had been for more than one
year prior to said date constantly attended and treated by a
physician for a general syphilitic condition of her system,
seriously affecting and imperiling her health, and for
fibroma, or tumor of the uterus, and for a most serious and
usually fatal disease, to wit, cancer of the uterus, seriously
affecting her health and imperiling her life, and of which
malady she died on March 27, 1905, which conditions of said
policy and contract were not waived by appellant.

The second paragraph is the same as the first, except that
it alleges that on August 27, 1904, the assured, knowing she
was not in sound health, but afflicted as aforesaid, applied
for insurance to appellant, and in her application, in answer
to the question, "Names of all physicians who have attended
within two years, and for what complaints," she stated,
"None," when in truth and fact she had been under con-
stant medical treatment by two physicians for the diseases
aforesaid for more than one year continuously next preced-
ing said date; that her answers were knowingly false, and
that she fraudulently concealed the truth from appellant
for the fraudulent purpose of procuring the insurance; that
the policy was issued on September 5, 1904, in ignorance of
the facts and of said false representations aforesaid, and
that it would not have been issued but for said concealment
and false representations aforesaid.

The third paragraph of answer differs from the first, in

this, that it makes a copy of the application a part of the pleading, and avers that it was the basis on which the policy was issued; that decedent was asked, and that she answered the question shown in the second paragraph; that from May 7, 1903, to the time of making the application for said insurance, she had been attended by two physicians and treated for subinvolution of the uterus, and for fibroma or tumor of the uterus, and for carcinoma or cancer of the uterus, a most serious, dangerous and fatal disease, of so grave a character as to require an operation on December 17, 1904, for the removal of part of the organ; that her death on March 27, 1905, resulted from said diseases from which she was suffering when the insurance policy was issued to her; that it was provided in said policy

"that said contract shall be void, if the insured, before its date, has been attended by a physician for any serious disease or complaint, or has had, before said date, and * * * cancer, * * * unless upon a disclosure of said conditions, a waiver thereof be signed by the secretary of the defendant;"

that when said policy was issued said insured was not in sound health, but was then, and had been for eighteen months, suffering from, and receiving treatment for a most serious and fatal disease, to wit, cancer of the uterus, which conditions were not disclosed by her, and were not disclosed until after her death, and that appellant had no notice or knowledge thereof, and did not waive the conditions so existing.

Demurrers for want of facts were addressed to each paragraph of the special answers, and overruled as to the first and second and sustained as to the third. Appellee replied to the answers by general denial and by special reply in two paragraphs.

The second paragraph of reply to the first paragraph of the answer alleges, in substance, that the insured did not make application to become a policy holder of appellant, but

she was repeatedly importuned by appellant to execute the insurance contract sued on, and finally yielded and consented to the execution of the policy; that the insured was examined on August 27, 1904, by a physician employed by appellant, for the purpose of ascertaining the state of her health, and this physician, after having made such examination, recommended to appellant that she was in good health and a first-class risk; that the cost of the insurance was twenty-five cents a week during the continuance of the policy; that the contract of insurance was executed and delivered on September 5, 1904; that appellant knew the state of health of the insured before and after the policy was executed and delivered, accepted payment from the insured of all the premiums and did not make any objection to her state of health or cancel the policy, but continued to collect the premiums, collecting the last one on March 27, 1905, the day she died, at which time appellant promised appellee that the policy would be paid within three days; that appellant frequently saw and talked with the insured, and on October 31, 1904, the insured gave notice to appellant that she was sick, but appellant took no steps to cancel said policy, but continued to collect the premiums as hereinbefore recited, thus treating the policy as valid. Appellee expressly denies that the insured was not in sound health on September 5, 1904, and prior thereto, and denies also that the insured was treated by a physician for the diseases alleged in appellant's answer, and affirms that the insured was not under the care of any physician, and that no physician ever disclosed to the insured that she was afflicted with such diseases. Appellee also denies all other material allegations contained in the first paragraph of answer, not already admitted as true, and avers that by collecting and retaining the premiums appellant caused the insured to believe that the policy was valid, and has not returned or offered to return said premiums.

The third paragraph of reply is addressed to appellant's

second paragraph of answer, and contains substantially the same allegations as the second paragraph, and, in substance, the following: That the insured was ignorant, and unable to read or write, and put her faith in appellant's physician, who read the answers to all the questions embraced in the exhibit indicated by ''Questions to be asked by the medical inspector;'' that the physician did not read the questions to the insured, or give her any instructions concerning the questions or answers; that she depended solely on appellant's physician to decide whether she was a fit subject for insurance, and after having made this examination he recommended to appellant that she be accepted as a first class risk, in sound health; that the physician wrote the answers to the questions propounded in the exhibit; that appellant knew the true state of health of the insured before and after the policy was executed, and by appellant's solicitation and collection of premiums, and by making no objections to the validity of the policy, induced the insured to believe the policy was valid, whereas, if appellant had not by this conduct induced the insured to believe the policy valid, she would not have paid any premiums, nor accepted the policy; that when the insured first became sick she notified appellant of that fact, and still appellant did not cancel the policy, but continued to collect the premiums, and appellee expressly denies that on September 5, 1904, the insured was afflicted with any diseases imperiling her life, or that she was not then in sound health.

Demurrers for want of facts were addressed to each of the special replies, and were overruled with exceptions.

The rulings on the demurrer to the third paragraph of the answer and to each paragraph of the special reply are assigned as errors; also overruling the motion for judgment on the answers to the interrogatories, and for a new trial.

The motion for a new trial alleges error of law and insufficiency of the evidence, the giving and refusing to give certain instructions, admitting and excluding certain evi-

dence, and overruling appellant's motion to discharge the jury.

The jury, in answer to interrogatories, found that decedent did not have any of the diseases charged in appellant's answers, and found the facts substantially as alleged in appellee's special replies. It found that on and before the time the policy was delivered to decedent she was not afflicted with a disease seriously affecting her constitution, and that prior to making the application for her insurance she was not attended by a physician for any disease sufficiently defined or marked seriously to affect her health, and did not know or believe she was so afflicted; nor was she so attended for two years prior to September 5, 1904, but was attended by a physician before that time for troubles of a temporary and nonserious character; that appellant did not at any time notify Mrs. Johnson or appellee of any election on its part to cancel said policy, nor did it at any time return or offer to return to her or to appellee the premiums paid thereon.

The first error relied on is the sustaining of the demurrer to the third paragraph of appellant's answer. This
1. paragraph proceeds on the theory of a warranty. The policy contained certain conditions, the first of which was:

"This policy is issued upon an application which omits the warranty usually contained in applications, and contains the entire agreement."

Notwithstanding our courts have held that persons applying for insurance who make statements of material facts are held to warrant them as true, the parties to such contracts are not thereby precluded from contracting otherwise, and language intended to create a warranty must be definite and unambiguous.

In the well-considered case of *Iowa Life Ins. Co.* v. *Haughton* (1910), 46 Ind. App. 467, this court said: "A warranty is created only by the most unequivocal language, and where

the words used will admit of two interpretations, that which is most favorable to the assured will be adopted.''

The statements of the applicant in this case must be considered as representations and not as warranties, for by such interpretation only is the contract which states that 2. the usual warranties are omitted rendered intelligent and consistent. Furthermore, the third paragraph of answer counted upon a provision in the policy that it should be void if the assured within two years before its date had been attended by a physician for any serious disease or complaint, or had any one of certain diseases, among them cancer, and unless such conditions had been disclosed and expressly waived by writing indorsed on the policy.

By numerous decisions it has been held that a provision making the policy void on certain named conditions means voidable at the option of the insurance company, and 3. ''that an answer seeking to avoid such policy must set up facts constituting an election to avoid it, and also show a seasonable return of the premium received.'' *Aetna Life Ins. Co.* v. *Bockting* (1907), 39 Ind. App. 586; *Glens Falls Ins. Co.* v. *Michael* (1907), 167 Ind. 659, 8 L. R. A. (N. S.) 708; *Hanover Fire Ins. Co.* v. *Dole* (1898), 20 Ind. App. 333; *United States, etc., Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345; *Modern Woodmen, etc.,* v. *Vincent* (1907), 40 Ind. App. 711; *Havens* v. *Home Ins. Co.* (1887), 111 Ind. 90, 60 Am. Rep. 689; *Masonic, etc., Assn.* v. *Beck* (1881), 77 Ind. 203, 40 Am. Rep. 295.

The policy under consideration provides:

''If this policy is or shall become void, all premiums paid shall be forfeited to the company.''

But the effect of these decisions is to nullify that 4. part of the contract which authorizes the company to retain the premiums if the ''policy is or shall become void,'' for the law is a part of every contract as much

as if written therein at length.    This would make the clause
in question read:

> "If this policy is or shall become voidable at the
> option of the company, all premiums paid shall be for-
> feited to the company."

In other words, it would be made to say that the company
might at its option elect to avoid its obligation as expressed
in the policy, and at the same time retain the premiums col-
lected.

In the case of *Modern Woodmen, etc.,* v. *Vincent, supra,*
this court said: "Rescission will not be permitted unless the
parties are placed *in statu quo.*   *   *   *   The doctrine has
its foundation in the natural justice which will not permit
one to retain the advantage and escape the burden of his
contract at the same time.   *   *   *   'But being possessed
of the fruits of the contract as ultimately made, it became
necessary   *   *   *   to elect as to the status that the
transaction should assume'."   See, also, *Horner* v. *Lowe*
(1902), 159 Ind. 406; *German Ins. Co.* v. *Shader* (1903), 68
Neb. 1, 93 N. W. 972, 60 L. R. A. 918; *Standard Life, etc.,
Ins. Co.* v. *Martin* (1893), 133 Ind. 376.

Insurance contracts belong to that class that may be
strictly construed, and are so construed against the company
whenever necessary to prevent a forfeiture of the pol-
5.   icy.   Where the policy contains inconsistent provi-
sions or terms requiring construction, that view
should be adopted, if possible, which will sustain rather than
forfeit the contract.    *Glens Falls Ins. Co.* v. *Michael, supra,*
666; *Iowa Life Ins. Co.* v. *Haughton, supra; Moulor* v.
*American Life Ins. Co.* (1884), 111 U. S. 335, 340, 4 Sup.
Ct. 466, 28 L. Ed. 447; *German-American Ins. Co.* v. *Yeag-
ley* (1904), 163 Ind. 651; *Hanover Fire Ins. Co.* v. *Dole,*
supra.

The doctrine of the foregoing cases is peculiarly applicable
to industrial insurance like that provided by the policy here
in question, for the persons who are thus insured are usually

people of limited means, many of them women, children and busy laboring men, not versed in matters of contract, and frequently illiterate and dependent upon the agent, in a large measure, for their information. "A policy of insurance, like any other contract, is to be read in the light of the circumstances that surround it." *Glens Falls Ins. Co.* v. *Michael, supra.*

"It is notorious that contracts of insurance are, on the part of the assured, entered into without the advice of counsel and chiefly upon the representations of the agents of the insurer." *Iowa Life Ins. Co.* v. *Haughton, supra,* at page 705.

The court did not err in sustaining the demurrer to the third paragraph of answer, for, as shown, the theory of warranty under the peculiar language of this policy can-3. not be sustained, and there are no averments showing an offer to rescind the contract and a return of the premiums received.

What we have said about the ruling on the demurrer to the third paragraph of the answer is largely applicable to the ruling on the demurrers to the special replies 6. which aver facts showing waiver and estoppel against appellant. Under the facts of this case, the decedent's knowledge and good faith may be considered in dealing with her representations.

In the case of *Moulor* v. *American Life Ins. Co., supra,* on page 343, it is said: "Looking into the application upon the faith of which the policy was issued and accepted, we find much justifying the conclusion that the company did not require the insured to do more, when applying for insurance, than observe the utmost good faith, and deal fairly and honestly with it, in respect of all material facts about which inquiry is made." We adopt this language as applicable to this case. The case just quoted from is cited approvingly in the case of *Iowa Life Ins. Co.* v. *Haughton, supra.* See, also, *Globe, etc., Ins. Assn.* v. *Wagner* (1900), 188 Ill.

133, 58 N. E. 970, 52 L. R. A. 649, 80 Am. St. 169; *Henn* v. *Metropolitan Life Ins. Co.* (1902), 67 N. J. L. 310, 51 Atl. 689; *Rogers* v. *Phenix Ins. Co.* (1890), 121 Ind. 570; *Presbyterian Mut. Assn. Fund* v. *Allen* (1886), 106 Ind. 593; *Fidelity Mut. Life Assn.* v. *Jeffords* (1901), 107 Fed. 402, 46 C. C. A. 377, 53 L. R. A. 193, 208.

7. The agent who secured the application and delivered the policy also collected the weekly premiums from the insured, and his authority as such agent in those matters is not questioned, and we therefore hold that his knowledge was that of the company. It is also shown that the assistant superintendent of the company saw and conversed with decedent frequently on matters relating to her insurance. *Metropolitan Life Ins. Co.* v. *Willis* (1906), 37 Ind. App. 48, and cases cited; *United States, etc., Ins. Co.* v. *Clark, supra; Aetna Life Ins. Co.* v. *Bockting, supra.*

8. The contention that no waiver is shown, because not in writing indorsed upon the policy, cannot be sustained, for such stipulation itself may be waived by the company either by express agreement or by conduct. *Hanover Fire Ins. Co.* v. *Dole, supra,* and cases cited on pages 338, 339; *Western Assur. Co.* v. *McAlpin* (1899), 23 Ind. App. 220, 77 Am. St. 423; *German Ins. Co.* v. *Shader, supra.*

9. The second and third paragraphs of reply show that with full knowledge of all the facts known to appellee's deceased wife, in regard to her state of health, appellant continued to collect and retain the premiums, and did not elect to rescind the contract of insurance, and so notify the insured or appellee; nor did it tender back the premiums paid. It is expressly denied that at the time Mrs. Johnson obtained the insurance she was afflicted with the diseases alleged in appellant's answer. Under the provisions of the policy, after it was delivered and accepted, it was a binding contract of insurance so long as the premiums were paid to and retained by the company, and while appel-

lant had a right to rescind the contract for sufficient cause, this right could be exercised by the company, and if it failed to take the necessary steps to rescind, as alleged in these replies, or retained the premiums after knowledge as alleged, the right of election would be exercised and the company would be precluded from denying liability on the policy. *United States, etc., Ins. Co.* v. *Clark, supra.*

In *Glens Falls Ins. Co.* v. *Michael, supra,* on page 679, the court said: "Upon discovery of the true condition of the title, whether before or after the loss, the insurer was required to make its election either to regard the contract as valid or void. A court cannot by its fiat alone render a voidable contract void, but it can only adjudge that the party entitled to avoid it has done so, and that it thereby and for that reason became invalid."

These replies show conclusively a failure on the part of the company to elect to rescind the contract and to meet the conditions necessary to avoid liability, and were, therefore, sufficient to withstand the demurrers.

Appellant insists that judgment should have been rendered in its favor on the answers to the interrogatories, and that there is no evidence to support the answers that show that decedent did not know, when she obtained the insurance, that she was afflicted with cancer or other disease seriously impairing her health. It may be conceded that the evidence is weak to support these answers, but on the other hand, the evidence tending to prove that decedent was so afflicted, is by no means conclusive. The physicians who give it as their opinion that she was so afflicted, and say they so informed her, admit that they may have been mistaken in their diagnosis, and further state that they did not make a microscopic examination of the discharge which they admit is necessary to a satisfactory and complete diagnosis. Furthermore, it was in evidence that when she consulted a physician on account of an irregular discharge from the uterus or womb, she was a woman about forty-two years

of age, and was not confined to her bed on account thereof, and only rested temporarily by reclining on a couch or in a chair; that she kept about twenty-five boarders, and during part of the time had no help, and was on her feet most of the time; that neither she nor members of her family knew or believed she had any serious disease. The jury found that prior to the time of her application for insurance she was not afflicted with any disease so sufficiently defined or marked as seriously to affect her health. The physician who examined her for the insurance found her to be a good risk, and stated that there was nothing in her appearance to indicate that she was in any way diseased or an undesirable risk. He also stated that he read the questions and wrote the answers as he understood them, without any explanation. True, her answer, "None," to a question calling for the names of physicians who had treated her within two years last past, and for what complaints, was not literally true, but we have construed her answers as representations and not as warranties, and she may have honestly interpreted this to mean treatment for any serious disease. *Fidelity, etc., Assn.* v. *McDaniel* (1900), 25 Ind. App. 608, 615.

The jury, in effect, found that when she was examined for the insurance, she had in her system the undeveloped disease from which she afterwards died, but that she did not know it and was not treated for it within two years immediately prior to obtaining the insurance. But this showing is insufficient to relieve the company from liability when no election is shown to rescind the policy and return the premiums. The facts that she did not seek the insurance, but was persistently solicited and urged to take it, and that the soliciting agent—Mr. Keys—and the assistant superintendent—Mr. Lamkin—saw her frequently, that she on different occasions after she obtained the insurance voluntarily informed appellant's agent of her failing health and notified him that

she was to undergo an operation, and that the agent knew of her going to the hospital and undergoing the operation, all tend to show good faith on her part, and we cannot, in the face of this showing, say there was no evidence on which the jury could base the answers to interrogatories returned with the verdict. The evidence and the answers to the interrogatories exclude the idea of fraud on the part of decedent, and strongly tend to show that she acted honestly and in good faith, though mistaken as to her condition.

The motion for a new trial assigns numerous errors on the giving and refusing to give instructions. The questions arising on the instructions need not be discussed in

12. detail, as the main objections relate to appellant's contention that the rule of warranty applies to decedent's answers, while we have concluded otherwise. These objections are determined by our conclusions already announced. The instructions refused are either covered by those given or state propositions of law contrary to our views of the law of this case. The instructions given state the law applicable to the issues fairly and fully to both parties, and the errors relied on, other than those growing out of the conflicting theories in the construction of the contract, if conceded to be errors, could not possibly have prejudiced the jury or harmed appellant. The instructions must be viewed as a whole, and, when so considered, those given present the law with commendable clearness and precision.

The alleged errors in the admission and exclusion of evidence fail to show any error that deprived appellant of any substantial right, or in any way prevented a fair trial of the questions in issue.

Sending the jury back to complete the answers to the interrogatories after they had reported the general verdict, but before they had separated, was a matter within

13. the discretion of the trial court, and his plain duty in the absence of some showing that so to do would

be unfair or harmful to one of the parties to the action. There is no showing that any harm resulted therefrom. We find no available error in the record.

Judgment affirmed.