IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1914, AND MAY
TERM, 1915, IN THE NINETY-NINTH YEAR ,
OF THE STATE.

---

### MODERN WOODMEN OF AMERICA v. YOUNG.

[No. 8,560.  Filed May 13, 1915.]

1. INSURANCE.—*Life Insurance.*—*Rescission.*—*Return of Premiums.*
—*Pleading.*—Where a warranty contained in an application for
life insurance is in fact false, and the contract provides that a
breach of warranty shall render it void and all premiums paid
shall be deemed forfeited, the courts will treat the contract as
voidable merely, and the insurer, in order to avoid liability there-
under, must act with reasonable promptness to that end on learn-
ing of the breach of the warranty, by rescinding the contract
and making a return or tender of all premiums received by it
thereunder, and in pleading such rescission a return or tender of
the premiums must be alleged.  p. 4.

2. INSURANCE.—*Life Insurance.*—*Rescission.*—*Return of Premiums.*
—*Pleading.*—Where a policy of insurance provided that it would
become null and void if the insurer acquired the habit of intem-
perate use of alcoholics, such specification was in the nature of
a condition subsequent, or a promissory warranty, which would
merely render the policy voidable if the insured became habitual-
ly intemperate, and, as in case of a breach of a warranty
occurring simultaneously with the making of the warranty, will
be treated as waived, in the absence of a rescission by the in-
surer within a reasonable time after learning the facts, accom-
panied by a return or tender of the premiums, except that a
return or tender need only be made of the premiums received
after the breach; hence an answer based on such breach must
allege a rescission and return or tender of the premiums.  p. 5.

3. INSURANCE.—*Life Insurance.*—*Rescission.*—*Return of Premiums.*
—Where a contract of insurance provides that it shall be void

if the death of insured results from the use of intoxicating liquors, or in consequence of the violation of law, no return of premiums paid to the insurer is necessary in order to avoid liability for a death occurring from either cause.    p. 6.

From Knox Circuit Court; *B. M. Willoughby,* Judge.

Action by Martha M. Young against the Modern Woodmen of America. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Benjamin D. Smith* and *Cullop & Downey,* for appellant. *Harry R. Lewis* and *James M. House,* for appellee.

CALDWELL, P. J.—This action is based on a benefit certificate, issued under date of November 27, 1899, by appellant to G. W. Young, as a beneficiary member of a local camp in Illinois. The certificate names appellee as beneficiary. Young died in Illinois on September 7, 1910. Appellant is a fraternal beneficiary society, organized under the laws of the state of Illinois. The contract of insurance consists of the written application, the certificate and the by-laws of the association. The complaint is not challenged. The answer is in three paragraphs, each based on a specified provision of the contract. Such provisions are contained in the certificate and in the by-laws, and are properly pleaded. The provisions of the certificate, so far as material, are as follows:

"If the member holding this certificate shall * * * become intemperate in the use of alcoholic drinks * * * or if his death shall occur in consequence * * * of any violation or attempted violation of the laws of any state or territory of the United States, then this certificate shall be null and void, and of no effect, and all moneys which have been paid, and all rights and benefits which may have accrued on account of this certificate shall be absolutely forfeited, and this certificate shall be null and void."

The material provisions of the by-law involved are as follows:

"If any member of this society * * * shall become intemperate in the use of intoxicating liquors

\* \* \* or if his death shall result directly or indirectly from his use of intoxicating liquors \* \* \* then the certificate held by said member shall by such acts become and be absolutely null and void, and all payments made thereon shall be thereby forfeited.''

The first paragraph of answer alleges in substance that Young, prior to his death became and was intemperate in the use of intoxicating liquors. This allegation is contained also in the second paragraph, and in addition, there is an averment to the effect that Young's death resulted from the use of intoxicating liquors, in that, on September 7, 1910, while in an intoxicated condition, caused by the intemperate use of intoxicating liquors, he was killed by one Cardinal, while defending himself from an unlawful assault committed upon him by Young. The third paragraph contains an allegation to the effect that the death of Young occurred in consequence of the violation by him of the laws of the state of Illinois, in that at a named place in that state on September 7, 1910, he committed an unlawful assault on Cardinal with a deadly weapon, with the intent to murder him, and that Cardinal thereupon killed Young while in defense of his person against such assault. This paragraph properly pleads the statutes of Illinois defining the respective crimes of assault, assault and battery, assault with intent to commit murder, and assault with a deadly weapon. Appellant filed also an answer in general denial. Appellee, without testing the sufficiency of the special paragraphs of answer, filed thereto a reply in general denial.

At the trial before a jury, some evidence was heard, without objection, in support of the allegation of the first paragraph of answer—that Young subsequent to the issuing of the certificate became addicted to the excessive use of alcoholics. All offered evidence, however, which, if admitted, would have tended to establish the distinctive features of the second and third paragraphs of answer, as herein outlined, was excluded. The court directed the trial on the theory, as appears from the record that neither para-

graph of special answer stated sufficient facts to constitute a defense, and that as a consequence, the only issue for trial was that formed by the complaint and the general denial filed in answer thereto. It was assumed that it was necessary to the sufficiency of each of the special paragraphs of answer that it contain averments that appellant, when it learned of the events and occurrences pleaded by such paragraphs respectively, as in avoidance of the cause of action, elected to rescind and did rescind the contract, and that as an essential step in so doing, it returned or tendered all premiums and assessments that had been received thereunder.

This case must be distinguished from those involving a warranty made at the inception of the contract, and relating to some existing or past fact or transaction. In such 1. a case where the matter warranted to be true is in fact false, the making of the warranty and its breach are simultaneous. Under such circumstances, where some instrument constituting part of the contract provides that a breach of such warranty shall render the policy or certificate void, and that all premiums or assessments received thereunder shall be forfeited, the rule is firmly established in this State that thereby the policy or certificate becomes voidable rather than void. The warranty feature of the contract is regarded as made for the benefit of the insurer, and that as a consequence he may waive it. In such a case, the insurer may at his election avoid the policy or certificate, and rescind the contract, provided he acts with reasonable promptness to that end on acquiring knowledge of the fact of such breach of warranty, but a necessary step in such rescission is a return or tender of all premiums or assessments that have been received under the contract. In such a case, if suit is brought on the policy or certificate, an answer to the complaint based on such breach of warranty must allege all the facts constituting such rescission, including a return or tender of the premiums. Among the

many cases that might be cited are the following: *American Cent. Life Ins. Co.* v. *Rosenstein* (1910), 46 Ind. App. 537, 92 N. E. 380; *Metropolitan Life Ins. Co.* v. *Johnson* (1912), 49 Ind. App. 233, 94 N. E. 785; *United States, etc., Ins. Co.* v. *Clark* (1908), 41 Ind. App. 345, 83 N. E. 7C0; *Modern Woodmen, etc.* v. *Vincent* (1907), 40 Ind. App. 711, 80 N. E. 427, 82 N. E. 475, 14 Ann. Cas. 89. The contract becomes susceptible to annulment by reason of the breach of warranty. On the exercise of the right to rescind by reason of such breach, where such warranty and breach date from the inception of the contract, it follows that the effect of the rescission reaches back to the breach and annuls the contract *ab initio*. It is apparent in such case that since the return or tender of the premiums or assessments is an essential step in rescinding, such return or tender must be as broad as the rescission. If the facts be such that a rescission, if made, must reach back to the inception of the contract, all premiums received under the contract must be returned or tendered in order that there may be a rescission. The provision of the contract relating to the forfeiture of premiums and assessments under such circumstances itself becomes of no effect. Being a part of the contract, it is annulled with it. *Commercial Life Ins. Co.* v. *Schroyer* (1911), 176 Ind. 654, 657, 95 N. E. 1004, Ann. Cas. 1914 A 968; *Washburn* v. *Union Central Life Ins. Co.* (1914), 143 Ala. 485, 38 South. 1011.

Here, however, the first paragraph of answer is based on the violation of that specification of the certificate and by-law relating to the acquiring of the habit of the intemperate use of alcoholics. Such specification is in the nature of a condition subsequent or a promissory warranty. There could not be and is not alleged to have been a breach of it until sometime after the inception of the contract. Such a breach also might be waived by the insurer, and therefore on its occurrence, the contract was thereby rendered voidable at the election of the insurer,

rather than void. In such a case and for like reasons, a return or tender of the premiums or assessments received would be essential to a rescission based on the breach as under the circumstances involved in the line of cases first above cited. But here such · breach affected the contract only from its occurrence, which was subsequent to the making of the contract, and a rescission in its effect would relate only to that date. It follows that here also a return or tender of premiums or assessments was an essential step in such rescission, but appellant in so rescinding was required to return or tender only the premiums or assessments received after the breach. *Supreme Tribe, etc.* v. *Lennert* (1912), 178 Ind. 122, 131, 98 N. E. 115. It is now apparent that the first paragraph of answer is insufficient by reason of the absence of an allegation to the effect that appellant, on acquiring knowledge of such breach, elected to and did rescind the contract, and in so doing that it returned or tendered the premiums received after the breach.

Turning our attention to the second and third paragraphs of answer, facts are alleged in the former to the effect that Young's death resulted from his use of intoxicating liquors. By the terms of said by-law, death so resulting rendered the certificate void. Facts are alleged in the third paragraph that the death of Young occurred in consequence of a violation of the laws of the state of Illinois, By the terms of the certificate, death so occurring rendered it void. Under each of these circumstances, it cannot be ascertained that the particular provision of the contract is applicable until death has occurred—that is, the consummated violation of the particular condition of the contract, if such expression is legitimate, occurs simultaneously with the death of the insured. The contract then has terminated at least for all purposes except enforcement. The contract required no further payment of premiums or assessments. If death so resulting or occurring be deemed a breach of the particular condition of the contract, and if it should be

said that the principle is applicable which requires that premiums and assessments be returned and tendered in order that a defense may be made on that ground, then, as has been said, only the premiums and assessments received since the breach are required to be returned. The nature of the case is such, however, that the obligation to pay premiums or assessments terminated at the death of the insured, and it would, therefore, be presumed that none had thereafter been paid, and hence that none are to be returned.

The contract here, in its effect, does not differ materially from those specifying that nothing is to be paid if death results from certain causes or from certain causes within a designated period. In such cases, the courts regard the insurance as of a limited nature, and that death from the excepted causes or from such causes within the period specified, is not included within the contract of insurance. In such cases, the courts hold that the risk having attached, the contract has been and is valid as to death from all other causes, and beyond such period, and that the premiums have been paid in consideration of such insurance, and that consequently they have been earned. It follows that in such cases their return or tender is not a prerequisite to a defense of a suit on the policy. *Redmen, etc., Assn.* v. *Rippey* (1914), 181 Ind. 454, 103 N. E. 345, 104 N. E. 641, 50 L. R. A. (N. S.) 1006, note. See, also, as bearing on the question, the following: *Knights, etc., Ins. Order* v. *Shoaf* (1906), 166 Ind. 367, 77 N. E. 738; *Modern Woodmen, etc.* v. *Craiger* (1910), 175 Ind. 30, 92 N. E. 113, 93 N. E. 209; *Hodson* v. *Great Camp, etc.* (1911), 47 Ind. App. 113, 93 N. E. 861; 25 Cyc. 874, 875; 2 Bacon, Ben. Soc. and Life Ins. (3d ed.) §§320, 339; *Starr* v. *Aetna Life Ins. Co.* (1905), 4 L. R. A. (N. S.) 636, note; *Bloom* v. *Franklin Life Ins. Co.* (1884), 97 Ind. 478, 49 Am. Rep. 469; *Continental Life Ins. Co.* v. *Houser* (1887), 111 Ind. 266, 12 N. E. 479; *Continental Life Ins. Co.* v. *Houser* (1883), 89 Ind. 258; *Northwestern, etc., Ins. Co.* v. *Hazelett* (1886), 105 Ind. 212, 4

N. E. 582, 55 Am. Rep. 192; *Conboy* v. *Railway, etc., Accident Assn.* (1897), 17 Ind. App. 62, 46 N. E. 363, 60 Am. St. 154; *Blackstone* v. *Standard Life, etc., Co.* (1889), 3 L. R. A. 486, note; *Darrow* v. *Family Fund Society* (1889), 6 L. R. A. 495, note; *Supreme Lodge, etc.* v. *Bradley* (1904), 73 Ark. 274, 83 S. W. 1055, 108 Am. St. 38, 67 L. R. A. 770, 3 Ann. Cas. 872; *Wells* v. *New England Mut. Life Ins. Co.* (1899), 191 Pa. St. 207, 43 Atl. 126, 71 Am. St. 763, 53 L. R. A. 327.

In *Dickerson* v. *Northwestern Mut. Life Ins. Co.* (1902), 200 Ill. 270, 277, 65 N. E. 694, the policy provided that, if within two years from its date, the insured should die by his own hand, the policy should be null and void and all payments forfeited. The insured committed suicide before the expiration of the insurance purchased by one quarterly payment. It was there held that the insurer was not bound, before relying on the defense of suicide, to declare the policy void and tender back the premiums. The court said: "Counsel refers to cases where policies have been rescinded for fraud or false representations in procuring them, but such cases have no application here. Of course, where the insurance company seeks to rescind and declare the contract void *ab initio*, it must, as in all cases of rescission, place the party in *statu quo*, because in such cases it would be inconsistent to claim that the policy was never in force, and at the same time retain the premiums paid as a consideration for a risk, which had never been assumed." Under somewhat similar circumstances, and where the insured committed suicide before the expiration of the time for which he had paid, the following language is used: "The contracts of insurance, when fairly and reasonably construed, show that death of the insured by suicide, sane or insane, was a risk not undertaken by the insurer at all. There is no merit in the contention that a return of the premiums paid by Kelly was a prerequisite to a defense by the insurance company. The company earned the premiums paid

by Kelly for the risk which it agreed to assume, and which it did assume and carry until Kelly's death. This risk embraced death from practically all other causes but suicide. Cases where fraud may have been so practiced in the negotiations as to render the contract voidable at the instance of the company, or cases where no risk at all ever attached, are totally inapplicable to the facts disclosed in this case." *Mutual Life Ins. Co.* v. *Kelly* (1902), 114 Fed. 268, 280, 52 C. C. A. 154, See, also, *Phoenix Ins. Co.* v. *Stevenson* (1879), 78 Ky. 150; *Davison* v. *London, etc., Ins. Co.* (1899), 189 Pa. St. 132, 42 Atl. 2; *Farmers Mut. Ins. Co.* v. *Home Fire Ins. Co.* (1898), 54 Neb. 740, 74 N. W. 1101; *Colby* v. *Cedar Rapids Ins. Co.* (1885), 66 Iowa 577; 2 Bacon, Ben. Soc. and Life Ins. (3d ed.) §323. We hold that an allegation of a return or tender of premiums or assessments was not necessary to the sufficiency of the second and third paragraphs of answer, and that the court consequently erred in excluding the offered evidence.

There is some confusion in the record respecting the christian name of Cardinal, in conflict with whom it is alleged Young lost his life. Notwithstanding this confusion, the error is presented.

The judgment is reversed with instructions to sustain the motion for a new trial, and with permission to reform the pleadings if desired.

NOTE.—Reported in 108 N. E. 869. As to conflict of laws in respect to nonforfeiture of life policies, see 104 Am. St. 483. As to the duty of insured to negative death or accident from excepted cause. see 4 L. R. A. (N. S.) 636; 50 L. R. A. (N. S.) 1006. As to return of premiums as condition of cancellation by virtue of cancellation clause, see 13 L. R. A. (N. S.) 884. See, also, under (1) 29 Cyc. 227, 66, 185; (2) 29 Cyc. 227, 185; (3) 29 Cyc. 194.