AETNA LIFE INSURANCE COMPANY *v.* DOERR.

[No. 9,245. Filed April 6, 1917. Rehearing denied November 2, 1917. Transfer denied October 28, 1920.]

1. INSURANCE.—*Life Insurance.*—*Death From Excepted Cause.* —*Rescission.*—*Return of Premiums.*—Under a policy of life insurance providing that if insured commits suicide within one year, the policy shall be void, that the quarterly premium in a stipulated amount shall be payable in advance, and that from the amount to be paid the beneficiary shall be deducted any unpaid premium for the current policy year, insured having paid the premium one year in advance and committed suicide during the first quarter, the insurer was not required to return any portion of the premium paid to avail itself of the defense of suicide, since, the policy becoming void not *ab initio* but only upon insured's death, and being issued on an annual premium basis, though with the privilege of payment in quarterly installments, the entire premium was earned by carrying the risk a part of the first quarter. pp. 40, 42, 44.

2. INSURANCE.—*Life Insurance.*—*Death From Excepted Cause.* —*Rescission.*—*Return of Premiums.*—Where a life insurance company actually carries a risk, and death occurs from an excepted cause, it need not tender back the premiums for former periods, or for the current period during which such death occurs, in order to defend, since the premiums paid have been earned. p. 41.

3. INSURANCE.—*Life Insurance.*—*Policy.*—*Construction.*—In construing a policy of life insurance, every clause and every word should, when possible, have assigned to it some meaning, and a harmonious whole made to appear, since it will not be presumed that the parties intended any provision to be meaningless. p. 43.

From Vanderburgh Circuit Court; *Duncan C. Givens,* Judge.

Action by Elizabeth Doerr against the Aetna Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Cunningham & Ortmeyer,* for appellant.
*George K. Denton,* for appellee.

BATMAN, J.—This is an action by appellee against appellant on a policy of life insurance. Issues were joined and trial was had by the court. At appellant's request the court made a special finding of facts and stated its conclusion of law thereon. Judgment was thereupon rendered against appellant for $1,170 and costs, from which it appealed and assigned the following errors on which it relies for reversal:

Third: The court erred in its conclusion of law stated upon the special finding of facts. Fourth: The court erred in overruling the appellant's motion for a new trial.

The special finding of facts is long and covers many pages of appellant's brief. For the sake of brevity, we have greatly abridged the same and only set out so much thereof as seems necessary for a proper understanding of the questions raised and determined. Such portion is as follows:

(1) That on November 10, 1911, the defendant executed and delivered to one Henry P. Doerr its policy of insurance on his life in the sum of $1,000; that said policy contained, among others, the following provisions in substance: The consideration for this policy is the application, and quarterly premiums of $14.13 to be paid in advance on the 10th day of November, February, May, and August in each year during its continuance. In the event of the death of the insured, the

amount of the policy shall be paid to Elizabeth Doerr, wife of the insured, if she survive him, less any unpaid premium for the current policy year. The company will accept the premiums payable for annual, semiannual or quarterly periods, according to the published rates for such, at the time this policy is issued, provided that before any change is made from the method of payment herein stipulated the policy shall be forwarded to the home office of the company for proper indorsement. This policy shall not take effect until the first premium hereon shall have been actually paid during the good health of the insured, a receipt for which payment shall be the delivery of the policy. If any subsequent premium be not paid when due then this policy shall cease, subject to the values and privileges hereinafter described. (Here follow provisions for thirty-one days of grace with interest.) This policy and application therefor constitutes the entire contract between the parties hereto, and shall be incontestable after one year from its date of issue, except for nonpayment of premium. If the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void.

(2) That at the time of the execution and delivery of said policy, the insured paid the first quarterly premium thereon in the sum of $14.13, and under date of November 7, 1911, executed to the defendant his three promissory notes, each for the sum of $14.13, due on February 7, May 7, and August 7, 1912, respectively; that on November 24, 1911, the defendant executed and delivered to the insured its three premium renewal receipts for $14.13 each, dated February 10, May 10 and August 10, 1912, respectively, evidencing the payment of the quarterly premiums on said policy due on such dates.

(3) That the insured on February 7, 1912, and

within less than one year from November 10, 1911, committed suicide by causing his own death with his own hands by hanging himself.

- (4) That said promissory notes were never paid, or filed against the estate of insured, but were tendered back to the administrator of his estate on July 6, 1912, and were refused by him; that subsequently on June 30, 1914, the defendant brought said notes into court and delivered them to the clerk of this court for the use and benefit of the plaintiff, and any person entitled to the same, where they remained continuously since said date; that no other tender of said notes was made, and no tender of any money was ever made by defendant to any one on account of the payment of said premiums; that the tender of said notes to the administrator and the deposit of the notes with the clerk of this court was not made with reasonable promptness; that proofs of the death of insured were duly made and forwarded to defendant on March 11, 1912, and no objections were made to their form or sufficiency; that such proof disclosed said facts as to the suicide of insured.

(5) That the insured had, prior to his death, performed all the conditions of said contract of insurance on his part to be performed, and the plaintiff had, prior to the bringing of this action, performed all the conditions thereof on her part to be performed; that the defendant, after the death of the said insured, and before the bringing of this action, waived the defense of suicide, and elected to treat said policy of insurance as valid; that interest on said policy amounts to $170, and the entire amount of principal and interest is $1,100.

The court stated as a conclusion of law on such findings that the plaintiff is entitled to recover from the defendant on the cause of action stated in her complaint the sum of $1,170, together with her costs. Appellant

duly excepted to said conclusion of law, and filed its motion for a new trial, which was overruled and a proper exception reserved. Judgment was thereupon rendered against appellant, in accordance with said conclusion of law, from which this appeal is prosecuted.

It will be observed that it is expressly found that the policy in suit provides that if the insured shall commit suicide within one year from its date, while sane or insane, the policy shall be null and void, and that the insured did commit suicide within the time specified. Such facts would of themselves prohibit a recovery in this case, if it were not for the further fact, likewise expressly found, that the appellant, after the death of the insured, and before the bringing of this action, waived the defense of suicide and elected to treat said policy of insurance as valid. If this finding is sustained by the evidence, then the appellee would be entitled to recover under the facts found. We have therefore directed our attention to the evidence in order to ascertain if it supports such finding. An examination of the record has led us to the conclusion that the only evidence which in any way bears upon the question of waiver is the evidence which shows that appellant did not tender back said premium notes until July 6, 1912, and did not keep such tender good by depositing them with the clerk of the court in which said cause was pending until June 30, 1914, and never, at any time, tendered back any money on account of the payment of such quarterly premiums, all as stated in such special findings.

Appellant contends that such facts do not constitute a waiver of the defense of suicide, for the reason that no tender of either money or premium notes was required under the terms of the policy in suit. This seems to be the turning point in the case, and its determination will be decisive of the question involved.

It is conceded that the insured committed suicide

within one year from the date of the policy. The act of suicide brought into operation provision No. 1. 10 of the policy, which reads as follows:

"If the insured shall commit suicide within one year from the date hereof, while sane or insane, this policy shall be null and void."

Appellee's first contention under such provision is that the act of suicide on the part of the insured rendered such policy void from its inception, but that before appellant could avail itself of such defense it was necessary to tender back the quarterly premium received in cash, and also the three quarterly premium notes or cash in lieu thereof. It will be noted that all of the premiums were paid prior to the suicide of the insured, and hence prior to the appellant's knowledge of the act which rendered such policy void. The policy by its language does not impose any obligation on appellant to refund any portion of the premium paid. Nevertheless we agree with appellee that, if such policy was void from its inception by reason of the suicide of the insured, then the tender back of all premiums received, regardless of their form, would have been necessary in order to defend on such ground, as a failure so to do within a reasonable time after knowledge thereof would have constituted a waiver of such defense. It is no doubt true that the procuring of insurance with the intention to commit suicide is a fraud on the insurer and renders the policy void from its inception, as contended by appellee, but in this case there is no such charge and no evidence of any fact constituting fraud or from which such an inference can be drawn. Appellant did not so treat the policy, or attempt to defend on such ground, but apparently proceeded on the theory that the policy was valid until rendered void by the act of suicide. Appellee seeks to draw a distinction between policies which provide that suicide within one year "is

a risk not assumed," and those which provide that, in case of suicide within one year, the policy "shall be null and void." The claim is made that, in those of the former class, it would be proper to hold that the risk was carried until the act of suicide, and hence a return of premium was not necessary in order to defend, but in those of the latter class no risk was carried because the policy was void *ab initio,* and therefore a seasonable return of the premium was necessary in order to defend. We do not believe such distinction is tenable. In the case of *Supreme Tribe, etc.* v. *Lennert* (1912), 178 Ind. 122, 98 N. E. 115, it was held that a risk attached in a policy which provided that it shall "become null and void" on the happening of a specific event and continued until such event occurred, and that a return of the premium paid was not necessary in order to defend. In the case of *Modern Woodmen, etc.* v. *Young* (1915), 59 Ind. App. 1, 108 N. E. 869, there was a like holding in a policy which provided that, on the happening of a particular event, the certificate "shall be null and void." There is no substantial difference between these cases and the one at bar, and hence they are controlling on this question. We are therefore unable to hold that the policy in suit was void from its inception, but rather became void on the suicide of the insured. This being true, it is apparent that appellant was not required to return the first quarterly premium paid in cash in order to avail itself of the defense of suicide, under the rule that, where a life insurance company actually

2. carries a risk and death occurs from an excepted cause, it need not tender back the premiums for prior periods, or the current period during which such death occurs in order to defend. *Continental Life Ins. Co.* v. *Houser* (1883), 89 Ind. 258; *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254; *Continental Life Ins. Co.* v. *Houser* (1887), 111 Ind. 266, 12 N. E.

479; *Supreme Tribe, etc.* v. *Lennert, supra; Red Men's, etc., Assn.* v. *Rippey* (1914), 181 Ind. 454, 103 N. E. 345, 104 N. E. 641, 50 L. R. A. (N. S.) 1006; *Modern Woodmen, etc.* v. *Young, supra.* This is .true because the premiums so paid have been earned, and hence there is no liability for their return. The rule is otherwise where the policy was void from its inception, and hence never in fact had any existence, and no liability against the insurer was ever created thereby. *Red Men's, etc., Assn.* v. *Rippey, supra; Metropolitan Life Ins. Co.* v. *McCormick* (1898), 19 Ind. App. 49, 49 N. E. 44, 65 Am. St. 392; *Metropolitan Life Ins. Co.* v. *Bowser* (1898), 20 Ind. App. 557, 50 N. E. 86; *Modern Woodmen, etc.* v. *Young, supra.* The difference is marked and well grounded, and a failure to note the distinction may lead to confusion.

Appellee's second contention is that, even if the court should hold that the policy was valid at its inception, and so continued until the act of suicide by

1. the insured, no more than the first quarterly premium could be retained by appellant, as the insured died by his own hands within such first quarter, and hence the three notes given in payment of the remaining three quarterly premiums, or cash in lieu thereof, should have been seasonably returned if appellant desired to avail itself of the defense of suicide. Appellant's counter contention is that the cash payment of $14.13 and the execution of the three promissory notes of like amounts by the insured bound each party to the policy, under its terms, for the current policy year; that, since the policy was valid until made void by the act of suicide, a risk was carried; that the entire premium for the current policy year was thereby earned, and that a return of the premium paid, or any part thereof, was not a prerequisite to the right of defense on the ground of suicide.

A determination of these contentions necessitates a construction of the policy itself. An inspection of the policy discloses that the consideration named is the application and "the quarterly premium of $14.13 to be paid to the company in advance, at its home office or to its agent, at or before five o'clock p. m. of the 10th day of November, February, May and August in each and every year during the continuance of this policy." If this was the only provision of the policy with reference to the payment of premiums, appellee's contentions that the policy was issued on a quarter-yearly premium basis, that all premiums paid beyond any current quarter should be considered advance payments of unearned premiums, and hence recoverable on the policy becoming void during any prior quarter, would be plausible and perhaps tenable. However, this is not the only provision of the policy on this subject, and the rule for the construction of written contracts requires that we must construe the policy as a whole. Such rule requires that

3. every clause and even every word of a contract should, when possible, have assigned to it some meaning, and a harmonious whole be made to appear, for plainly the parties so intended, since it will not be presumed that they wilfully inserted a mere idle provision. *Irwin* v. *Kilburn* (1885), 104 Ind. 113, 3 N. E. 650; *Warrum* v. *White* (1909), 171 Ind. 574, 86 N. E. 959; *Nave* v. *Powell* (1913), 52 Ind. App. 496, 96 N. E. 395; *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513.

The further provision of the policy to which we refer reads as follows:

"The amount becoming due from the company by reason of the death of the insured shall be payable to the death beneficiary as follows: Elizabeth Doerr, wife of the insured, if she survives the insured, otherwise, to the insured's executors, ad-

ministrators or assigns, less any unpaid premium for the current policy year."

Here is an express provision for the payment of the balance of the *unpaid premium for the current policy year*. Why was such a provision inserted in the
1.  policy? Why recognize a current policy year?
Why make provisions for the payments of a full year premium? These are pertinent questions, and their answer will be helpful in arriving at the intention of the parties.   The true answer seems to be found in the fact that the parties intended that the policy should be issued on an annual premium basis, with the privilege for payment in quarterly installments.   Any other theory would leave the provision requiring the payment of the full premium for the current policy year, under the circumstances named, without consideration and unsupported by reason, while the theory we have suggested is reasonable and gives effect to both provisions of the policy with reference to the payment of premiums as the rule of construction requires.   This conclusion is further supported by the fact that the term "current policy year" is used twice in section No. 14 of the policy, under the title "Loans," and the terms "policy year" and "years premium" appear under the heading "Table A" of the policy, thus indicating that the policy was written on an annual premium basis.   This construction is supported by the reasoning of Judge Taft in the case of *McConnell* v. *Provident, etc., Assur. Society* (1899), (Tenn.) 92 Fed. 769, 773, 34 C. C. A. 663, wherein it is said:   "It is an annual policy, but it is an annual policy on which the premium is payable by quarterly installments, leaving the insured at liberty to drop it at any quarter, and imposing no liability on the part of the company unless the quarterly payment is made at the end of the quarter.   If, however, the in-

sured die at the end of the first quarter of the current year, the insurance company receives only one-quarter of the annual premium, instead of the whole. It has insured the deceased for a year, subject to his voluntary default. He has died, and the policy is earned. He should pay the whole year's premium therefor, but has only paid one quarter's premium. To meet this injustice, the proviso is introduced that, if the insured should happen to die before the whole of said quarterly payments shall become due, then the company shall be entitled to deduct premiums for all the subsequent quarters of that current year from the amount of the policy." The policy in that case expressly provided for an annual premium payable quarterly, and in the case at bar it is impliedly so provided, and hence the reasoning of that case is equally applicable here.

We recognize the authorities which hold that an insurance policy is an unilateral contract, and that the premium therefor is a debt only when there is embodied in the policy itself an absolute promise to pay. *Union, etc., Ins. Co.* v. *Adler* (1906), 38 Ind. App. 530, 73 N. E. 835, 75 N. E. 1088; *Supreme Lodge, etc.* v. *Hahn* (1909), 43 Ind. App. 75, 84 N. E. 837; *Supreme Tent, etc.* v. *Fisher* (1910), 45 Ind. App. 419, 90 N. E. 1044. And hence we hold in this case that the insured was under no legal obligation to pay the last three quarterly premiums for which he gave his notes, and their payment could not be enforced during his life if such notes had not been given. He could have stood on the letter of his policy and paid or defaulted in the payment of the quarterly premiums as they matured as he might elect. If he paid, his policy would have continued in force, but, if he defaulted, his policy would have lapsed at the expiration of the thirty-one days of grace. However, *he did not elect to stand on the letter of his policy*, but chose to pay the last three quarterly installments of the

premium for the current policy year in advance of their maturity by the execution of his promissory notes. He thereby waived his right to defer the payment of such installments of premium until their maturity, and then pay or default as he might then elect, and accept the attendant results of his choice. By the execution of such notes he put it beyond his power to default in the payment of such premiums, and thereby permit such policy to lapse. He placed such notes beyond his power of recall or other control. *He was bound for their payment, in the absence of fraud or mistake.* They were likewise beyond the power of his administrator or beneficiary to recall or otherwise control, since they could have no greater rights in that regard than the insured possessed during life. When the insured executed said notes in payment of such quarterly installments of premium for the current policy year and appellant accepted the same for such purpose, the premium transaction for that year was closed, as far as they affected the policy or the insured's rights thereunder, and the policy thereby became binding upon both for the entire first year, subject to the conditions contained therein.

This is a reasonable interpretation of the acts of the parties in the payment and acceptance of such premium for the entire policy year and a fair construction of the terms of the policy in light of the language used, and leaves no room for the application of the rule that contracts of insurance will be construed against the insurer in case of doubt, as suggested by appellee.

It therefore follows that the insured, by the execution of said notes, relieved his beneficiary from the possible deduction of any portion of such premium from the face of the policy, but paid no more than he was required to pay by its terms in order to keep the same in force for the whole of such current policy year in pursuance of his election so to do, as evidenced by the execution of

such notes; and consequently appellant received no more than it was entitled to receive for such purpose. And, since all of said premiums were paid prior to the insured's death and the risk was carried by appellant for almost the entire first quarter, the premium for the whole of such current policy year was earned and not subject to repayment, although appellant was relieved from liability thereunder by reason of death from such excepted cause. *Metropolitan Life Ins. Co.* v. *McCormick, supra; Modern Woodmen, etc.* v. *Young, supra; Red Men's, etc., Assn.* v. *Rippey, supra; Mutual Life Ins. Co.* v. *Kelly* (1902), 114 Fed. 268, 280, 52 C. C. A. 154. We are therefore forced to the conclusion that appellant was not required to pay or tender back any portion of the premium received on said policy as a prerequisite to the right of defense on the grounds of suicide within one year from the date thereof. And, since the failure of appellant to pay or tender back such premium with reasonable promptness was the only evidence bearing on the question of waiver, we conclude that the decision of the court was not sustained by sufficient evidence, and the court, for that reason, erred in overruling the motion for a new trial.

Judgment reversed, with instruction to sustain appellant's motion for a new trial, and for other proceedings not inconsistent with this opinion.